PEARCE'S HEIRS
*vs*
PATTON *et al.*

---

CHANCERY.

*Case* 44.

October 19.

Case stated.

# Pearce's Heirs *vs* Patton, *et al.*

APPEAL FROM THE LOUISVILLE CHANCERY COURT.

*Limitations.    Retrospective laws.    Unconstitutional en-
actments.    Private rights.    Obligation of contracts.*

CHIEF JUSTICE EWING delivered the opinion of the Court.

THIS is a controversy about a lot of ground in the city
of Louisville.   George Walls devised the lot in question
to his daughter, Elizabeth Patton, the wife of Samuel
Patton.   In 1797, Samuel Patton, by deed prepared in
the name of himself and wife, conveyed the lot to Sa-
rah Elliott, and the deed, upon his acknowledgment
alone, was duly recorded.   In 1806, the deed was pre-
sented to his wife, they then being residents of Hardin
county, and signed and sealed by her, and on privy ex-
amination before two Justices of the Peace, acknowl-
edged and certified by them, and their certificate record-
ed in due time, under the deed of her husband before
spread on the record, and the name and seal of Mrs.
Patton attached, under his name, to the record of his
deed; but the deed, after being thus executed by Mrs.

Patton, was not recorded, nor was there any *dedimus* <span style="float:right">PEARCE'S HEIRS<br>*vs*<br>PATTON *et al.*</span>
*potestatem* directed to the Justices, authorizing them to
take the acknowledgment of the *feme.* Mrs. Patton died
in 1822, her husband surviving, who died in July, 1837.
In February, 1838, Thomas W. Patton, their only son
and heir, instituted an action of ejectment for the lot,
against Gray and wife, who were in possession, claiming
the same by sundry derivative conveyances from Sarah
Elliott, to whom his father had conveyed, and his mother
attempted to do so as before shown, and recovered a judg-
ment for the lot. From that judgment an appeal was
taken to this Court and the judgment affirmed, as will be
seen by reference to the case reported in 2 *B.. Monroe*,
12. Upon the return of the cause to the lower Court,
Pearce's heirs, whose ancestor had sold and warranted
the title of the lot to Ormsby, under whom Gray and wife
claimed, filed their bill under the 11th section of the act
of 1831, (1 *Stat. Laws*, 450,) against Thomas W. Pat-
ton and others, asking a confirmation of the deed of his
mother and a release and surrender of his title, alledging
that they had paid and satisfied to Gray and wife, the
consideration of Ormsby's purchase from their ancestor.
The Circuit Court, upon the hearing, dismissed their bill,
and they have appealed to this Court.

Waiving the question raised as to the sufficiency of the <span style="float:right">*The case in-*<br>*volves the con-*<br>*struction of the*</span>
certificate of the Justices, of the privy examination and <span style="float:right">*struction of the*<br>*11th sec. of the*</span>
acknowledgment of the wife, and due execution and re- <span style="float:right">*statute of 1831,*</span>
cord of the deed, and all other questions as to defects in <span style="float:right">*(1 St. Law, 463)*<br>*concerning con-*</span>
the same, except the single defect of a want of *dedimus* <span style="float:right">*veyances.*</span>
*potestatem*, authorizing the Justices to examine the wife
and take her acknowledgment, duly returned and recorded,
and the question involves directly, the construction of
the 11th section of the statute of 1831, *supra*, which
never before, that we are aware of, has received the con-
struction of this Court, as applicable to such a state of
case.

That section provides, "that in *all cases* where a deed <span style="float:right">The provisions<br>and proviso of</span>
of conveyance *has* been heretofore made by a *baron* and <span style="float:right">of the 11th sec..</span>
*feme*, and the same has been duly executed, but with this <span style="float:right">examined.</span>
defect only, that a *dedimus potestatem* did not issue in
the first instance, authorizing the Justices to take the

PEARCE'S HEIRS
*vs*
PATTON *et al.*

privy examination, that the *grantor* or those claiming the
land under such deed, may exhibit a bill in chancery, at
any time after the first day of January, 1838, in the Court
of the Circuit where the land may be situated, and upon
full and satisfactory proof being made, that such deed has
been executed by *baron* and *feme*, *without fraud or guile*,
and that there has been *seven years peaceable, continued*,
and *uninterrupted possession* under such deed, since the
passage of this act, and that the only defect is the want
of a *dedimus potestatem*, to take the acknowledgment
and make the privy examination, to decree a confirma-
tion of such deed, and to make such other order as may
be necessary to perfect the title: Provided, however, that
so much of this act as authorizes suits against *femes eo-
vert*, to obtain a due execution of deeds made without a
*dedimus potestatem*, or for any defect in taking the privy
examination, shall not be so construed as to apply to any
case where a *feme* has commenced suit to recover *her es-
tate* or *dower* in lands, or *where such suit shall be com-
menced within the term of seven years aforesaid, next
after the passage of this act.*"

It is apparent that this section is very unskilfully draft-
ed and if construed according to the literal import of the
language used, in several places, the obvious purpose of
the Legislature, in its enactment, would be perverted,
and the section rendered, in many respects, an absurdity.

The *grantor* is authorized to file the bill, which if
taken literally, would authorize the husband to file a bill
against his wife for confirming his own deed. The *gran-
tee* was obviously intended, instead of the grantor. Again,
the section authorizes a bill to be filed at any time after
the *first day of January*, 1838, when the proviso saves
the right to the *feme* to sue for the land, at any time with-
in *seven years* from the *passage* of the act, and it passed
on the *fifteenth of January*, 1831, of course the seven
years would not expire until the fifteenth of January,
1838, fifteen days after the time fixed for filing the bill.

In the same manner, we must conclude was the terms
*femes covert* inadvertantly used in the proviso, for *femes*.
The draftsman having his mind fixed on the condition of
the wife, at the time when the conveyance was made as

*feme covert*, fell into the error of using the term *feme covert*, instead of *feme*, in the proviso. To contend that *feme covert* was meant, is to impute to the Legislature the gross and palpable injustice, of tantalizing the *feme* with a right to sue within seven years, "to recover her estate," when there was no mode known to our laws, nor any provided by the statute, by which she as a *feme covert* could sue during the life of her husband, as she had no right of entry, nor could her heir sue, after her death, during the life of his father, he being tenant by the courtesy, and having passed all his interest to the grantee.

Nor could it be called *her* estate properly, or at any rate, *her* estate for which she could sue during the life of the husband, but the estate of the grantee of the husband. And the fact of calling it *her* estate, and for which she might *sue* at any time within seven years from the passage of the act, clearly shows that the Legislature looked to, and intended only to provide for a case, where the husband was dead, and the wife was entitled to the estate, and had at the passage of the law, a right of entry and of suit for the recovery of the same. Besides, the section provides for relief only in a case where the grantee had remained in the peaceable and *uninterrupted possession for seven years;* where the possession during the life of the husband could not be held otherwise than *peaceable* and *uninterrupted*, against any assertion of right by the wife or her heir, which shows that the section was intended to apply to a case, where the peaceable possession might be disturbed at any time during the seven years, by the suit of the wife or her heir, but not being disturbed, they were to be barred of their remedy.

It may also be observed, that there is no saving in the proviso, in favor of the right of suit on the part of the *heir* of the *feme*, if she be dead, yet the gross injustice of excluding the heir from the right to sue for his inheritance within the time secured to his mother, could never have been intended or contemplated by the Legislature, and such construction as would imply it, should never be given to the section.

PEARCE'S HEIRS
*vs*
PATTON *et al.*

The construction to be given to the 11th section.

Correcting the inaccuracies and inadvertancies re-ferred to, in the language and frame of the section, and giving a consistant effect to all its provisions, we under-stand, it with the proviso, as applying only to cases where deeds had been made by *femes covert*, in conjunction with the husband, without a *dedimus potestatem*, *before* the passage of the act, and the wife's right of entry, or that of her heir, *had accrued before* that time, by the death of the husband or otherwise, and that in such cases, and such only, if she or her heir failed to sue for seven years from the passage of the act, her or his reme-dy was intended to be barred, and the title confirmed in the grantee, or others who might have been *peaceably possessed* of the land under such defective conveyance for seven years, provided it could be shown that the deed was made without *fraud* or *guile.* The section thus con-strued, was intended to operate as a conditional act of limitation; the right to the benefit of the bar being made to depend upon and only available to the grantee or his vendee, upon the condition of his showing that the deed was obtained *without fraud* or *guile.* The fact that the limitation was not intended to be general, or to apply to all cases indiscriminately where the *feme* had conveyed, but only to cases in which it could be shown that the conveyance was made *fairly and without fraud* or *guile*, may have been the reason for not allowing the bar to be pleaded at law, as in other cases, but of giving the juris-diction to a Court of Chancery over the subject, as the most appropriate tribunal to inquire into and determine the fraud or guile, the want of which was made the con-dition upon which alone the right to the benefit of the bar was made to depend.

As a prospective act of limitation the 11th section of the statute of 1831 was within the power of the Legislature, test-ed by either the State or Federal constitutions, so far as it limits the time of bring-ing suits by *femes covert* where the right of equity existed.

As a prospective act of limitation, general or condi-tional, though made to retroact upon executed contracts or conveyances previously made, we have no doubt that the section was within the constitutional competency of the Legislature, whether tested by the State or Federal Con-stitution. The wife or her heirs having a right of entry, and reasonable time, seven years, allowed to sue, if she or they failed to avail themselves of the remedy, they might justly be regarded, for the peace of society, as sur-rendering their title, or abandoning their contract.

This being the legitimate construction to be given to the section, it at once appears that it does not apply to the case before the Court, as Mrs. Patton was dead before the statute was enacted, and her heir, Thos. W. Patton, the defendant, had no right of entry or of suit, at or before its passage, nor till within about six months before the expiration of the seven years allowed for bringing suit, his father having died only about that length of time before the termination of the period limited.

We are the more disposed to give to the section the construction which we have given to it, inasmuch as a different construction, or a construction which makes it apply to, and take away the fee of the wife or her heir, upon the impossible condition of their failure to sue within seven years, when their hands were tied, and they, or either of them had no right of entry or of suit, by the existing laws, and none was provided by the section, would not only be grossly unjust, but a palpable invasion of private right secured to the citizen by the constitution of Kentucky, and we think also by the constitution of the United States.

That section of the constitution of Kentucky, which provides : "Nor shall any man's property be taken or applied to public use, without just compensation being previously made to him," has been construed by this Court, and properly, to inhibit the invasion of, or the taking of private property, for *any purpose*, or under and pretext whatever, except for public use, and for that only, upon affording previous just compensation to the owner. This provision of the constitution affords a shield to private right, and should be so construed, against any enactment of the Legislature, direct or indirect. It would be a poor protection to the right of the citizen, to hold and enjoy unmolested, his private property, if the Legislature could take it away and vest it in another, in *presenti or in futuro*, by imposing terms and conditions upon his right to hold it, which is impossible for him to perform; as by requiring him to sue within a specified time, when there is no remedy afforded or mode prescribed by the law by which he can sue. If even any terms could be imposed, which would embarrass his right, or obstruct his full en-

PEARCE'S HEIRS
*vs*
PATTON *et al.*

It does not apply to cases where no right of action in the *feme* or her *heirs*.

The 12th section of the 10th art. of constitution of Kentucky, and application to this case stated.

PEARCE'S HEIRS
vs
PATTON et al.

joyment of his estate, indirect invasions of private property, should never be countenanced, as it is easy to frame pretexts, dictated by apparent policy and personal hardship at the time, to evade and fritter down the protection intended to be afforded. Nor can the fact that Patton had the right to sue for six months before the termination of the time limited, by the unforeseen and accidental death of his father, make any difference. Six months is not the time prescribed for the suit, but seven years, and if it was, we should hardly regard it as a *reasonable* time, to

If the Legislature had not the power to pass a retrospective act of limitation, it had no right to confer on the Court of Chancery the right to apply such a principle.

be constitutionally available, to bar the remedy as a mere act of limitation. Nor can it make any difference that the Legislature has made a Court of chancery the instrument to divest the right of the heir. If the Legislature had not the power to do it, neither could they delegate the power to do it, to any other body, judicial or executive.

We also incline strongly to believe, that the section, if construed as contended for, would be an infraction of that provision of the constitution of the United States, which prohibits the enactment of any law impairing the obligation of contracts.

That part of the constitution of the U. S. prohibiting the passage of laws impairing the obligation of contracts applies as well to executed as executory contracts.

The 11th section of the statute of 1831, (1 St. Law 450,) so far as it authorizes a Court of Chancery to confirm title in a vendee, of a *feme covert* who has conveyed by deed which was ineffectual when made, impairs the obligation of contracts and is in violation of the constitution of the U. S. (1 Sec. Art. 10.)

It is well established that this provision of the constitution applies as well to executed as executory contracts. Mrs. Patton, and her heir after her death, held the fee simple title to the lot in question, under the grant from the Commonwealth and the several mesne conveyances down to her. That title she or her heir has never forfeited nor parted with, by any contract binding in law or equity. The deed relied on as her deed, is a nullity, and has no more legal effect or operation in passing her title, in law or equity, than if the conveyance had been acknowledged before John Doe or Richard Roe, or any other private person, or if it had never been acknowledged at all, or privy examination made. It amounts to no more than an *attempt* to make a contract or conveyance, which has no legal or equitable force or validity, and notwithstanding which, the wife and her heir after her, held the fee simple title in remainder, after the death of her husband, as fully and effectually as if no such attempt to convey had been made. If the section in question

takes away the right and vests it in another, does it not impair those contracts of conveyance from the Commonwealth down to her and her heir, under which they held, and had a right to hold the lot in question? But for the section the title of the heir is unquestionable. If it be divested, by what power has it been divested, by the act of the mother or by the act of the Legislature? If by the act of the Legislature, their act divests a vested right in the heir, and not only impairs but destroys the obligatory force of the contracts of conveyance down from the Commonwealth to the heir, under which he had the right to hold the lot, and repose in safety in its full enjoyment.

We are aware that the Courts of Pennsylvania have established a different doctrine in relation to the subject before us, from the doctrine here avowed, and have even gone much further than we are required to go, in sustaining legislative enactments, in giving validity to void and invalid contracts. But we never can bring ourselves to sanction the doctrine there established.

The Supreme Court of Ohio, in the case of the *lessee of Christian Good* vs *Elizabeth Zercher*, (12 *Ohio Rep.* 364,) had the subject under consideration, in a case very analogous to the one before us, and have established a different doctrine from that sustained in Pennsylvania, and one, as we conceive, much better calculated to preserve and sustain the inviolability of private rights against legislative interference.

Nor can we yield our sanction to the doctrine avowed by the majority of the Supreme Court of the United States, in the case of *Saterlee* vs *Matthewson*, (2 *Peters' Rep.* 412,) in its application to this case. Though it may be true that a law which gives validity to a void contract, cannot be said to impair the obligation of *that* contract, yet it seems to us that a law which gives force and efficacy to a contract which was a nullity, or which was no contract before, but a mere unauthorized attempt to make a contract, by which the fee is taken from one person and transferred to another, as effectually impairs, nay uproots and destroys the obligation of the contracts under which the title was held, as if those contracts, by a direct act of legislation, had been declared nullities, or the title

---

*Margin notes:*

Pearce's Heirs
*vs*
Patton *et al.*

Decisions of Pennsylv'a. disapproved.

Decisions of Ohio approved.

*Saterlee* vs *Matthewson*, (2 Pet. 412,) cited, but not approved in extenso. A statute which takes from one man property & gives it to another impairs the validity of the contract by which the property was held. The Court concur in the main with Justice Johnson in his dissent from the majority of the Court.

wrested from the holder and given to another without such pretext, or reclaimed by the Commonwealth.

As Justice Johnson, in the case of Saterlee, *supra*, with whose opinion, in the main, we concur, justly remarks, "What boots it, that I am protected by that constitution from having the obligation of my contract violated, if the legislative power can *create a contract* for me, or render *binding* upon me, a contract which was null and void in its creation. To give efficacy to a *void* contract is not, it is true, *violating* a contract, but it is doing in-finitely worse, it is advancing to the very extreme of that class of arbitrary and despotic acts, which bear upon in-dividual rights and liabilities, and against the whole of which, the constitution most clearly intended to interpose a protection commensurate with the evil." And after giving his views of the ground upon which the decision of the State Court might be supported, he remarks, "the decision of the State Court is supported under this view of the subject, without resorting to the portentous doctrine, (for I must call it portentous,) that a State may declare a void deed valid as affecting individual litigants, on a point of right, without violating the constitution of the United States. If so, why not create a deed or destroy the operation of a limitation act after it has vested a title."

We also concur with him in opinion, that it was an unfortunate opinion in the Supreme Court originally, by which the words "*ex post facto*," in the constitution of the United States, was confined to penal cases only, and agree with him in a note appended to his opinion, that if that construction is to stand, (and it has been too long settled and acted upon now to be disturbed,) a construc-tion should, by intendment, be given to the next clause inhibiting the impairment of the obligation of contracts, which would afford that protection to private rights, springing out of, or dependant upon contract, against re-troactive legislation, which was contemplated by the framers of that instrument.

Upon the whole, we are perfectly satisfied that the complainants were not entitled to the relief which they asked. The decree of the Chancellor dismissing their bill is, therefore, affirmed.

*Pirtle* for appellants; *C. A. Wickliffe and Ballard* for appellees.