SARAH ROACH *v.* J. H. FRANCISCO *et al.*

(*Knoxville.* September Term, 1917.)

1. **ACKNOWLEDGMENT.** Separate examination of wife. Validity.

Shannon's Code section 3753, requiring the wife's acknowledgment to be taken separately after privy examination, renders invalid an alleged acknowledgment taken over the telephone without examination. (*Post, pp.* 362-363.)

Cases cited and approved: Ellett v. Richardson, 68 Tenn., 293; Currie v. Kerr, 79 Tenn., 142; Cox v. Association, 101 Tenn., 491; Childers v. Coleman, 122 Tenn., 122; Shields v. Netherland, 73 Tenn., 193; Edwards v. Boyd, 77 Tenn., 204; Grotenkemper v. Carver, 77 Tenn., 280; Ronner v. Welcker, 99 Tenn., 627; Cason v. Cason. 116 Tenn., 195.

Case cited and distinguished: Wester v. Hurt, 123 Tenn., 509.

Code cited and construed: Sec. 3753 (S.).

2. **ACKNOWLEDGMENT.** Married woman. Privy examination. Parol evidence.

In the wife's action to impeach the certificate of acknowledgment which the notary took over the telephone, parol evidence was admissible to show that the privy examination required by Shannon's Code, section 3753, was not taken, since only a valid certificate imports verity. (*Post, pp.* 363-365.)

3. **ACKNOWLEDGMENT.** Married woman. Privy examination.

Bejach's Act (Laws 1913, chapter 26), providing that married women are emancipated from all disabilty on account of coverture and the common law, is totally abrogated in that respect, does not dispense with the necessity under Shannon's Code, section 3753, of a married woman's privy examination in alienating her homestead, in view of Const. article 11, section 11, prohibiting the alienation of the homestead without the joint

consent of husband and wife, since it·is the wife's examination, and not her signature, which gives validity to the deed. (*Post, pp.* 365-368.)

Acts cited and. construed: Acts 1913, ch. 26.

Cases cited and approved: Montgomery v. Hobson, 19 Tenn., 437; Norment v. Wilson, 24 Tenn., 310; Ins. Co. v. Waller, 116 Tenn., 11; Kobbe v. Land Co., 117 Tenn., 320, Taylor v. Swafford, 122 Tenn., 303; In re Bowers, 137 Tenn., 189; Cope v. Meeks, 40 Tenn., 387; Knott v. Carpenter, 40 Tenn., 542; Gillespie v. Worford, 42 Tenn., 632; Mount v. Kesterson, 46 Tenn., 452; Laird v. Scott, 52 Tenn., 350; King v. Nutall, 66 Tenn., 224;

Constitution cited and construed: Sec. 11, art. 11.

4. **HOMESTEAD.** Sale. Validity. Rights of parties.

In the wife's suit to enjoin a sale of a house under a deed of trust on the ground that her acknowledgment of it was void, it was defendant's right to have the house sold subject to the wife's homestead right. (*Post, p.* 368.)

FROM CAMPBELL.

Appeal from the Chancery Court of Campbell County.—HUGH J. KYLE, Judge.

J. N. RUSSELL, for plaintiff.

L. H. CARLOCK and J. WILL TAYLOR, for defendant.

MR. JUSTICE LANSDEN delivered the opinion of the Court.

This bill was filed by Mrs. Roach to enjoin the defendant, as trustee, from selling a house and lot in La-

Follette, Tenn., under the terms of a deed of trust executed to him. The complainant claims that she is entitled to homestead in the house and lot, and that the deed of trust is void as to her. She testifies that her husband brought the deed of trust to their home and asked her to sign it. When she inquired of him what the paper was about he cursed and abused her, and she signed the paper in order to stop his abusive language, without any knowledge of its contents. Some time afterwards she was called over the telephone by some person who she supposed was Mr. Carlock, and was asked by this person if she signed the instrument, and she replied, over the telephone, that she did. The house and lot was all the real estate which the husband and wife owned, and they were living upon it. After getting the money, for which the deed of trust was executed, the husband deserted his wife and children. The deed of trust appears upon its face to have been regularly acknowledged by the complainant with her husband before George Stott, notary public.

The defendant Francisco was an accommodation indorser for Roach, the husband, and in default of payment by his principal, he has paid the note, with interest, to the National Bank of La Follette, the payee therein.

Section 3753 of Shannon's Code provides as follows:

"Every deed or other instrument of writing executed by husband and wife and acknowledged or proved

and registered in the manner hereinafter prescribed, shall bind them, their heirs or assigns. The officer or court, before whom the execution of such deed or instrument is acknowledged or proved, shall examine the wife privily and apart from her husband, touching her voluntary execution of the same, and her knowledge of its contents and effect; and if she acknowledges or states that she executed the same freely and voluntarily, and without any compulsion on the part of her husband, and the clerk or other officer is satisfied that she fully understands the same, he shall, in addition to the certificate of probate or acknowledgment above prescribed, also put on the back of the deed, or annex to it, the following certificate [setting out the form of the certificate required]."

In *Wester* v. *Hurt,* 123 Tenn., 509, 130 S. W., 842, 30 L. R. A. (N. S.), 358, Ann. Cas., 1912C, 329, this section of the Code was under construction, and we held that the privy examination of a married woman could not be taken over the telephone. In that case it was said:

"The deed of a married woman living with her husband, conveying her general estate, is void without her privy examination. The form of this examination is prescribed by statute (Shannon's Code, section 3753), and every material part of this form is necessary to make the probate of the deed valid upon its face. The action of the officer taking the acknowledgment is a judicial one, and establishes by judicial force: (1) That there was a personal interview between him and

the bargainor; (2) that this interview was private and apart from the husband; and (3) that the execution of the deed was confessed to have been made freely, voluntarily, and understandingly, and without compulsion or constraint from her husband, for the purposes therein contained. . . .

These conclusions are abundantly established by all of our authorities. It is clear that if the officer taking the privy examination of the married woman does not have a personal interview with her, and does not propound the required questions to her while in her presence, he cannot determine judicially whether the deed has been executed in the manner and under the conditions that the law requires in order to make a valid conveyance of a married woman's estate. This is manifest from the language of the statute itself. The officer is to determine as a matter of judicial judgment that she did execute the instrument freely, voluntarily, and understandingly, and without compulsion or constraint from her husband; and this he cannot do out of her presence, because her appearance, manner and demeanor may become more potent factors in ascertaining the truth of this than mere formal answers to questions.''

The conclusion of the court in the case was that examination of a married woman under such circumstances ''was a mere empty form, unauthorized by the statute, and the certificate made by the officer, although it contained the proper words, does not establish the facts certified to.'' Such a conculsion was inevitable

from our previous decisions construing the foregoing section of the Code. It has been held that the omission of the words "and having . . . been examined" is fatal to the validity of the certificate of privy examination. It was held that such an omission is not a mere verbal one which can be overlooked under the provision of section 3757 of Shannon's Code, because the requirement that the certificate shall show the examination requires the notary to perform an act that is not included in the fact of the mere acknowledgment of the execution of the instrument. *Ellett* v. *Richardson,* 9 Baxt., 293; *Currie* v. *Kerr,* 11 Lea, 142; *Cox* v. *Association,* 101 Tenn. (17 Pick.), 491, 48 S. W., 226; *Childers* v. *Coleman,* 122 Tenn. (14 Cates), 122, 118 S. W., 1018.

We know as a matter of history that the legislature did not contemplate that this solemn act would be done by telephone for the reason that there were no telephones when the statute was enacted in 1715, 1813, 1833, and we cannot construe such an acknowledgment to fall within it because the words employed by the legislature forbid such a construction.

What we have said has been upon the assumption that the proof shows that the acknowledgment was taken over the telephone. The only direct proof on the subject is the testimony of Mrs. Roach. She is positive in her statement that such was the fact, and she was not cross-examined or otherwise contradicted in any way. The notary, it is shown, has absconded, and his whereabouts is unknown. It is shown by stipula-

tion of counsel that neither the bank nor defendant Francisco knew anything about the relationship existing between Mr. and Mrs. Roach, nor did they participate in the fraud practiced upon her. We have no doubt, after reading her deposition, about her acknowledgment having been taken over the telephone in the manner as she has stated. As intimated above, there is nothing to the contrary, and there is no impeachment of her testimony in any particular. The bank has been paid the sum due it, and the question here presented is between the surety of Mrs. Roach's husband and Mrs. Roach.

There are two questions made upon this testimony: First, it is said that the testimony itself is inadmissible to contradict the certificate of the notary; and, second, it is said that the unsupported testimony of the defrauded wife is insufficient to overturn his certificate.

Parol testimony has been received in many cases for the purpose of invalidating the officer's certificate by contradicting the words contained in it. *Shields* v. *Netherland,* 5 Lea, 193; *Edwards* v. *Boyd,* 9 Lea, 204; *Grotenkemper* v. *Carver,* 9 Lea, 280; *Ronner* v. *Welcker,* 99 Tenn. (15 Pick.), 627, 42 S. W., 439; *Cason* v. *Cason,* 116 Tenn. (8 Cates), 195, 93 S. W., 89.

In this case parol evidence is offered to show that the privy examination was not taken either in law or in fact. When it appears that the officer did not make the privy examination, or that he was not in the presence of the married woman, his power to act is at an

end, and his certificate is nothing but empty words. They have no verity and import nothing except the dereliction of the officer. It is offered to impeach the jurisdiction of the notary, and shows the certificate to be a forgery.

By the very terms of the statute, it is only acknowledgments taken in the manner prescribed thereby that are binding upon the makers, and it should be obvious that parol evidence is admissible to show that the statute has not been complied with. If it were not so, the statute could be flagrantly disregarded, wives would be bound without warrant in law, and even forgeries would be unimpeachable, and landowners would be without remedy, although they never sold nor did they receive anything of value.

It is unwise to lay down a fixed rule to determine the weight of evidence required to overturn the officer's certificate. The ascertainment of truth is the purpose of all judicial inquiry, and whenever the court is satisfied that the truth has been reached, it would be folly to refuse to accept it because of some arbitrary rule respecting the weight of evidence. When it is sought to impeach the certificate upon the unsupported testimony of the defrauded wife, or upon the unsupported testimony of the wife and husband, such testimony should and will be closely scrutinized for the purpose of determining its truth; and ordinarily, such testimony, after the lapse of a long period of years, would be insufficient. But when the defrauded wife acts promptly, and there is no suspicion

surrounding her testimony, and nothing unreasonable in the story which she relates, and there is no attempt to contradict her, and she is a person of good character, her testimony may be sufficient. The truth of Mrs. Roach's statement is vouched for in that the defendants did not cross-examine her, did not offer anything to contradict her, she was immediately abandoned by her husband after the attempted execution of the deed of trust, and the notary public has absconded. In addition to all this, counsel representing defendants procured a stipulation that their answer might stand as a cross-bill in the event Mrs. Roach succeeded in her original bill for the purpose of procuring a sale of the land subject to her homestead. We do not undertake to lay down a definite rule by which other cases are to be judged, but we are content to say that in this case we have no doubt of the truth of Mrs. Roach's statement. Cases may often arise, and if an inflexible rule as to the weight of testimony required should be adopted they doubtless would arise, in which no one but the defrauded landowner could testify to impeach the certificate of the notary, as in the case of a forged certificate. It could not be said, if the court were satisfied of the truth of the complainant's story, that he must lose his land because some official was willing to forge a certificate to a deed showing that he had conveyed it.

It is next said that it was not necessary to have Mrs. Roach's privy examination in order to make her deed valid, and binding. It is said that the Bejach's

Act (Acts 1913, chapter 26), emancipating married women, dispenses with the necessity of the privy examination. This act provides as follows:

"Married women . . . are hereby fully emancipated from all disability on account of coverture, and the common law was to the disabilities of married women and its effect on the rights of property of the wife, is totally abrogated, and marriage shall not impose any disability or incapacity on a woman as to the ownership, acquisition, or disposition of property of any sort, or as to her capacity to make contracts and do all acts in reference to property which she could lawfully do if she were not married; but every woman now married, or hereafter to be married, shall have the same capacity to acquire, hold, manage, control, use, enjoy, and dispose of, all property, real and personal, in possession, and to make any contracts in reference to it, and to bind herself personally, and to sue and be sued with all the rights and incidents thereof, as if she were not married."

This enactment cannot be construed as dispensing with the necessity of a married woman's privy examination in alienating her homestead, although the language employed by the legislature may seem to be broad enough to do so. Section 11 of article 11 of the Constitution provides as follows:

"A homestead in the possession of each head of a family and the improvements thereon, to the value, in all of one thousand dollars shall be exempt from sale under legal process during the life of such head

Roach v. Francisco.

of a family, to inure to the benefit of the widow, and shall be exempt during the minority of their children occupying the same. Nor shall said property be alienated without the joint consent of husband and wife, when that relation exists."

The privy examination is part of the execution of the deed. It is the wife's examination, and not her signature, which gives it validity. *Montgomery* v. *Hobson,* Meigs, 437; *Norment* v. *Wilson,* 5 Humph., 310; *Ins. Co.* v. *Waler,* 116 Tenn. (8 Cates), 11, 95 S. W., 811, 115 Am. St. Rep., 763, 7 Ann. Cas., 1078; *Kobbe* v. *Land Co.,* 117 Tenn. (9 Cates), 320, 98 S. W., 175; *Taylor* v. *Swafford,* 122 Tenn. (14 Cates), 303, 123 S. W., 350, 25 L. R. A. (N. S.), 442.

A construction of the Married Woman's Act which would dispense with privy examination would make the act violate this section of the constitution, as often construed by this court, and that, of course, we cannot give unless we are compelled to do so by the very words employed by the legislature. *In re Bowers,* 137 Tenn., 189, 194 S. W., 1093. Therefore we hold that the "disability on account of coveture" contemplated by the legislature was only such disability as was cast upon married women either by the common law or by statute. It is beyond the power of the legislature to abrogate disabilities contained in the Constitution.

It has been uniformly held by this court that a married woman can convey her homestead only by the precise means provided by the Constitution and stat-

utes. *Cope* v. *Meeks,* 3 Head, 387; *Knott* v. *Carpenter,* 3 Head, 542, 75 Am. Dec., 779; *Gillespie* v. *Worford,* 2 Cold., 632; *Mount* v. *Kesterson,* 6 Cold., 452; *Laird* v. *Scott,* 5 Heisk., 350; *King* v. *Nutall,* 7 Baxt., 224, and many other cases cited in the notes to section 3756 of Shannon's Anno. Code. We have recently held that the Married Woman's Act (Acts 1913, chapter 26) repeals disabilities created by statute on account of coverture, and starts the statutes of limitation running against a married woman as though she were a *feme sole,* but it should be observed that in each of those cases the disability from which the married woman was held to be emancipated was created by statute. This, of course, the legislature could remove, but it cannot remove a disability written in the Constitution.

As stated above, counsel agreed that the defendants might treat their answer as a cross-bill and pray for a sale of the house and lot subject to the homestead of Mrs. Roach. This is clearly the defendant Francisco's right, and a decree will be entered here accordingly. If there is any question as to the value of the homestead being more than $1,000, the case may be remanded for the purpose of having homestead laid off to Mrs. Roach.

It results that the decree of the court of civil appeals is reversed, and a decree will be entered here in accordance with this opinion.