[File No. 6241.]

W. A. ACKLIN and Mary A. Acklin, Respondents, v. FIRST NATIONAL BANK OF MOTT, NORTH DAKOTA, a Corporation, and Kaspar Niederkorn, Sheriff of Hettinger County, North Dakota.

FIRST NATIONAL BANK OF MOTT, NORTH DAKOTA, a Corporation, Appellant.

(254 N. W. 769.)

Opinion filed April 11, 1934. On Rehearing May 23, 1934.

*Jacobsen & Murray,* for appellant.

*Hanley & Hanley,* for respondents:

MOELLRING, J.  This is an appeal from a judgment in favor of the plaintiffs and against the defendants, cancelling a real estate mortgage.  The appeal is from the whole judgment and is based solely upon the judgment roll.  The trial court made findings of fact and conclu- sions of law upon which judgment was entered, and this appeal challenges the conclusions of the court from the facts found.  In the brief of counsel for defendants, it is stated: "There is no settled statement of the case, the defendant being content to stand on the findings of fact as a basis for a judgment in its favor."  The trial court's findings are clearly within the issues framed in the pleadings, and the only attack, therefore, is upon the conclusions of law.

The trial court found that plaintiffs, who are husband and wife, were occupying the premises involved as a homestead at all times material to this case and are still so occupying the same; that the homestead property consists of a dwelling house, located upon a lot less than one-half acre in area, in the city of Mott, and is of a value not to exceed $2,500.

The court found, also, that prior to January 25, 1923, the plaintiff, W. A. Acklin, was indebted to the defendant bank in the sum of $1,068.11, and that on said date he executed a note for that amount in favor of the bank and also a chattel mortgage securing the same.  The note was also signed by his wife, Mary A. Acklin, one of the plaintiffs. On March 7, 1923, plaintiff, W. A. Acklin, applied to the defendant bank for a loan of $200 to buy seed grain, and the defendant bank finally made a loan to him in the amount of $175 for such purpose, on condition, however, that he execute a note for that amount and secure the same together with the said note for $1,068.11 upon the premises involved—the homestead of plaintiffs.  This he agreed to do and in pursuance thereof executed a note for $175 and also a real estate mortgage covering the homestead.  Both the note and mortgage were ante-

dated January 25, 1923, the date of the prior note mentioned, and the said mortgage purported to secure both notes. The note and mortgage were signed by the plaintiff, W. A. Acklin, at the office of the defendant bank on the same date, March 7, 1923.

The court also finds that the plaintiff, Mary A. Acklin, placed her signature upon the mortgage and the note of $175 at her home, on the 7th day of March, 1923, and "that at the time she placed her name thereon she did not know that said mortgage included the note for $1,068.11, but that she thought she was signing a mortgage upon her homestead for an amount not to exceed the $175.00."

It is found, also, that while the certificate of the notary in the mortgage states that the plaintiffs appeared before the notary and acknowledged their signatures, respectively, to the instrument, on the 7th day of March, 1923, the facts are that, "the plaintiff W. A. Acklin executed and acknowledged the mortgage above described in the defendant bank before the notary public E. H. Trousdale but that the plaintiff Mary A. Acklin never acknowledged said mortgage or her signature thereto before the notary public E. H. Trousdale, or before any other officer authorized to take acknowledgments. That said mortgage was completely filled out at the time she placed her name thereon. That said mortgage was filed for record in the office of the register of deeds of Hettinger County, North Dakota, on the 14th day of March, 1923. That the defendant The First National Bank of Mott took said notes and real estate mortgage with knowledge of the fact that the mortgage was signed by Mary A. Acklin outside of the bank and not before the notary public, E. H. Trousdale, and was not acknowledged by her."

The court also finds that from the year 1923 to the year 1931, the said defendant bank, as the alleged owner of the mortgage, never communicated with the plaintiff, Mary A. Acklin, with reference to the mortgage or asked her to pay the same; that the notes for $1,068.11 and $175, respectively, were renewed from time to time by W. A. Acklin, but that the wife never signed any of said renewal notes nor was she ever asked to sign any of them; and it is further found that the plaintiff, Mary A. Acklin, did not know that the real estate mortgage included and secured the note for $1,068.11 until proceedings were commenced in the year 1931 by the defendant bank to foreclose the mortgage by giving notice of intention to foreclose. The notice of

intention to foreclose was mailed to plaintiff, W. A. Acklin, by registered mail, was received by him on the 25th day of August, 1931, and the contents disclosed to his wife on the same date. This notice stated that the amount claimed to be due, including taxes and interest, was the sum of $1,286.19, and it was upon receipt of this notice that plaintiff, Mary A. Acklin, first discovered that the defendant bank was claiming security on the homestead for the payment of the note for $1,068.11.

Subsequently, the mortgage was foreclosed by advertisement and the premises were sold at public auction, pursuant to notice, on November 21, 1931, and sold to the defendant bank as the highest bidder for the sum of $1,363.76, which was the amount of the indebtedness fixed in the mortgage, together with costs; and on the same date a certificate of sale was issued by the sheriff to the purchaser, the defendant bank.

. The findings also disclose that this action was commenced by plaintiffs in the month of November, 1932, and within one year from date of sale under the purported foreclosure.

Counsel for the defendants in their brief present the issues in this court thus:

"1. Whether or not the mortgage became a valid one by virtue of an act of the Legislature of 1927.

"2. Whether or not the plaintiffs were and are estopped to assert the invalidity of the mortgage.

"3. Whether or not they can attack the validity of the mortgage after permitting the same to be foreclosed, and go to sheriff's deed."

The law with reference to the conveyance of a homestead as it existed at the time the instrument in question was signed by the husband and wife, is contained in § 5608 of the Compiled Laws of 1913, and reads as follows: "The homestead of a married person cannot be conveyed or incumbered, unless the instrument by which it is conveyed or incumbered is executed and acknowledged by both husband and wife."

Section 5607 of the Compiled Laws of 1913, amended by chapter 229 of the Session Laws of 1923, which chapter became effective as an emergency measure on February 3, 1923, also provides, in the second paragraph of said section, that a mortgage must be "executed and acknowledged by both husband and wife," to incumber a homestead.

These sections of our law were enacted to carry into effect the man-

datory provisions of § 208 of the State Constitution, which provides: "The right of the debtor to enjoy the comforts and necessaries of life shall be recognized by wholesome laws, exempting from forced sale to all heads of families a homestead, the value of which shall be limited and defined by law, . . ."

The provisions of said § 5608, Compiled Laws of 1913, came before this court for construction on several occasions, and it has been uniformly held, that where an instrument purports to convey an interest in the homestead estate, the instrument must be executed and acknowledged by both parties to the marriage relation; and, unless these statutory provisions have been strictly complied with, such purported conveyance is void.

In the case of Severtson v. Peoples, 28 N. D. 372, 148 N. W. 1054, in construing said section of our statute, this court held: "Under this statute it is just as essential that the instrument be acknowledged as that it be executed. Without both execution and acknowledgment the homestead is not conveyed." See also Rasmussen v. Stone, 30 N. D. 451, 152 N. W. 809; Justice v. Souder, 19 N. D. 613, 125 N. W. 1029; Gaar, S. & Co. v. Collin, 15 N. D. 622, 110 N. W. 81; Helgebye v. Dammen, 13 N. D. 167, 100 N. W. 245; Silander v. Gronna, 15 N. D. 552, 108 N. W. 544, 125 Am. St. Rep. 616, and cases cited; Yusko v. Studt, 37 N. D. 221, 163 N. W. 1066; Grotberg v. First Nat. Bank, 54 N. D. 548, 210 N. W. 21.

In the case of Severtson v. Peoples, 28 N. D. 372, 148 N. W. 1054, it was also held, "To constitute an acknowledgment the grantor must appear before the officer for the purpose of acknowledging the instrument, and such grantor must, in some manner, with a view to giving it authenticity, make an admission to the officer of the fact that he had executed such instrument." See also Rasmussen v. Stone, 30 N. D. 451, 152 N. W. 809.

The general purpose of requiring instruments to be acknowledged is to assure their authenticity for the purpose of placing the same of record, and as between the parties is, with few exceptions, binding upon them even though there is no acknowledgment. However, as pointed out on several occasions by this court, the requirements of said code § 5608, providing that the husband and wife must not only execute but also acknowledge an instrument purporting to convey or incumber

the homestead, presents an added characteristic. The act of acknowledging, therefore, is equally essential with the act of executing; and unless there is a concurrence of both acts no contract exists.

Justice Young, in commenting upon this section of our statute, in the case of Gaar, S. & Co. v. Collin, 15 N. D. 622, 110 N. W. 81, supra, stated: "The constitution of this state (§ 208) charged the legislature with the duty of protecting the homestead by suitable laws. . . . There is no constitutional restriction in this state inhibiting this legislation. It, on the contrary, merely carries into effect the mandate of the constitution."

In the case of Rasmussen v. Stone, supra, Justice Bruce, in commenting upon this statute in its application to the case then before the court, stated: "This statute makes essential to a valid conveyance not merely the acknowledgment by the wife, but the execution also. We are quite satisfied from a perusal of the evidence that there was no acknowledgment, as the notary public goes into the details of the transaction and can nowhere be made to say that any such thing took place. He merely testifies that the wife came to his office and told him that she would not stand in the way of her husband making a loan. He nowhere states that she told him that she had signed the notes and mortgage, or that she had attached her signature thereto."

The trial court found the value of the homestead property as not exceeding $2,500, which clearly determines the same as exempt under the provisions of our statute, § 5605, Compiled Laws of 1913, as amended by chapter 229, Session Laws of 1923 (§ 5606 of the 1925 Supplement to the Compiled Laws of 1913).

In the instant case the wife, not having appeared in person before the officer and having in no manner acknowledged her signature to the instrument, it follows that the contract was not completed, and said mortgage purporting to incumber the homestead is, therefore, null and void.

It is contended, however, that the subsequent enactment, chapter 275 of the Session Laws of 1927, as a curative statute, has remedied the particular defect in the instrument in question with reference to lack of acknowledgment by the wife, and that such instrument was thereby rendered a valid instrument.

The law which defendants invoke is § 1 of said chapter 275, and reads as follows:

"The execution, acknowledgment, filing and recording of all deeds, mortgages and other instruments in writing affecting the title to real property in this state, in good faith made, taken or certified to prior to the first day of January, 1927, and which have been filed or recorded in the proper counties of this state, be, and the same are hereby declared to be legal and valid for all purposes, anything in the laws of the State of North Dakota, or of any other state, territory or county at the time of such execution, acknowledgment, witnessing, filing or recording, to the contrary notwithstanding."

Subsequently, another curative measure was enacted, as contained in chapter 305 of the Session Laws of 1931. Section 1 of the latter enactment is identical in language with the section quoted.

The authorities, generally, hold that the object of curative statutes is not to defeat or enlarge the rights of the parties, but its ultimate purpose is to change the rules of evidence and thus permit proof of the contract contained in the instrument which otherwise would not be admissible; so that a contract which in equity and good conscience ought to be enforced is made valid and binding.

In determining the legislative scope or power in such matters, some authorities hold, since the prohibition in the constitution with reference to the enactment of ex post facto laws applies to criminal matters only, where there is a statutory requirement that might have been dispensed with by the legislature in the first instance, it is within the power of the legislature to dispense with it by a subsequent curative act.

With reference to the extent of the power of the legislature in such matters, the cases are not in harmony. Some hold that, where there is a defective acknowledgment of the instrument of conveyance, and which renders the instrument voidable, or void, the same may be cured by subsequent legislation. Satterlee v. Matthewson, 2 Pet. 380, 7 L. ed. 458; Watson v. Mercer, 8 Pet. 88, 8 L. ed. 876; Lanzer v. Butt, 84 Ark. 339, 105 S. W. 595; Tate v. Stooltzfoos, 16 Serg. & R. 35, 16 Am. Dec. 546; Kobbe v. Harriman Land Co. 117 Tenn. 320, 98 S. W. 175. See also Randall v. Krieger, 23 Wall. 137, 23 L. ed. 124; Downs v. Blount (C. C. A. 5th) 170 F. 15, 31 L.R.A.(N.S.) 1076.

586

Other authorities hold that, where there is no acknowledgment or the acknowledgment is so defective as to render the instrument void, it cannot be cured by subsequent legislative act; and this seems to be the consensus of opinion. 31 L.R.A.(N.S.) note p. 1079, last paragraph, and cases cited; Pearce v. Patton, 7 B. Mon. 162, 45 Am. Dec. 61; Grove v. Todd, 41 Md. 633, 20 Am. Rep. 76; Hollingsworth v. M'Donald, 2 Harr. & J. 230, 3 Am. Dec. 545; Klumpp v. Stanley, 52 Tex. Civ. App. 239, 113 S. W. 602; Holland v. Votaw, 62 Tex. Civ. App. 91, 130 S. W. 882, Id. 103 Tex. 534, 131 S. W. 406; Alabama L. Ins. & T. Co. v. Boykin, 38 Ala. 510; Fugman v. Jiri Washington Bldg. & L. Asso. 209 Ill. 176, 70 N. E. 644; Roach v. Francisco, 138 Tenn. 367, 197 S. W. 1099, 1 A.L.R. 1074.

Counsel for the defendants cite as supporting their contentions the case of Randall v. Krieger, 23 Wall. 137, 23 L. ed. 124, supra. That case can hardly be considered as an authority. The question there concerned the constitutionality of a curative statute, involving the right of dower. It was held that the act was applicable, since the inchoate right of dower is a mere expectancy or possibility, subject to legislative change at any time, and analogous to the expectancy of heirs before the death of the ancestor.

A leading case presenting the view of broad legislative powers with reference to curative acts, is the case of Downs v. Blount (C. C. A. 5th) 170 F. 15, 31 L.R.A.(N.S.) 1076, supra. This case arose in the southern district of Texas and involved the validity of a deed, the grantor being a married woman. The certificate of acknowledgment was clearly defective in that it failed to comply with the statutes of Texas relating to the acknowledgment of a deed by a married woman, and which the statute in such circumstances declared void. The court held, however, that there was a pretended acknowledgment, though defective, and that, while the statute stated that in such circumstances the instrument was void, the legislature, in using the term "void" in reality meant "voidable;" and the court held that a curative statute subsequently enacted remedied the defect. The case was decided by a divided court. The state courts of Texas, however, in cases subsequently arising, failed to follow this decision and, in construing the same laws, held to the contrary. Holland v. Votaw, 62 Tex. Civ. App.

91, 130 S. W. 882, supra; March v. Spivy, 63 Tex. Civ. App. 449, 133 S. W. 529.

In the said case of Downs v. Blount, it was indicated, however, that if the instrument was void, it was doubtful whether a curative statute could remedy the defect. The court said, in part: "These contentions present a question of much importance, for while the legislature might have the power to pass an act which removes a defect in an existing inchoate or ineffective contract, it might not have the power to create a conveyance—to make a contract between the parties."

In the early case of Alabama L. Ins. & T. Co. v. Boykin, 38 Ala. 510, supra, the court had occasion to construe a curative act in its relation to a defective acknowledgment. We quote the opinion in part: "While we admit that the legislature may change or modify the rules of evidence, and makes these modified rules applicable to existing rights, and even to existing suits, we think this statute goes much farther. It attempts to make valid and effective that which was before inoperative and void; effective to devest a title out of one, and vest it in another; and this by a mere edict of legislation. It attempts to declare, not only what the law shall be, but what it has been. It has been well said that 'to declare what the law is, or has been, is a judicial power; to declare what the law shall be is legislation.' . . . We think that to give this statute operation as its words import would be to break down the dividing wall between the legislative and judicial departments of the government, which, by the 1st section of the 2d article of our Constitution, are declared to be distinct. Moreover, we should invade that part of the 10th section of our Bill of Rights, which declares that the citizen shall not 'be deprived of life, liberty, or property but by due course of law.' A legislative edict which takes property from one, and gives it to another, is not 'due course of law.'"

In Fugman v. Jiri Washington Bldg. & L. Asso. 209 Ill. 176, 70. N. E. 644, supra, it was held that where an acknowledgment is necessary to transfer an estate and there is no acknowledgment, the legislature cannot supply the defect by curative act, and that to hold otherwise, would be in effect to transfer the estate of one person to another by legislative act.

In the case of Cooper v. Harvey, 21 S. D. 471, 113 N. W. 717,

it was held that a curative act did not affect the defective execution of an assignment of a mortgage, where a valid assignment was necessary to sustain a mortgage foreclosure and for lack of which the foreclosure was void. The court said, in part: "To give the construction to the curative act of 1903, contended for by the plaintiff, would be to transfer the legal title of property owned by one party to another, and this a curative act cannot do. . . . When the foreclosure proceedings were had, such an assignment was invalid, and the proceedings thereunder were void. It would not be competent therefore for the Legislature, by a subsequent curative act to render those void proceedings valid." To the same effect is Kenny v. McKenzie, 23 S. D. 111, 120 N. W. 781, 49 L.R.A.(N.S.) 775.

While the particular question involved has not been determined heretofore by this court, nevertheless we have already indicated certain views with reference to legislative powers concerning curative acts.

In the case of Finlayson v. Peterson, 5 N. D. 587, 67 N. W. 953, 33 L.R.A. 532, 57 Am. St. Rep. 584, it was held that where there was a defective publication of notice of mortgage foreclosure sale by advertisement, and the foreclosure therefore was void, a subsequent legislative act could not cure the defect. In this case the court said, in part: "We do not lay so much stress on the fact that the foreclosure sale was absolutely void, for we think that even when a proceeding of any kind is void, with the exception of a judicial proceeding void for want of jurisdiction, it is nevertheless within the power of the legislature to validate such proceeding by retroactive legislation, if it would be grossly unjust for the person against whom the healing law is directed to insist upon his purely technical rights, destitute of all equity. But the case should be a clear one. Nothing short of this should prompt a court to sustain such a law."

From the foregoing quotation it might seem, at first glance, that this court adheres to a broad doctrine of legislative power to declare valid that which is void. The language quoted merely implies, we believe, that the legislature might, by curative act, remedy a situation where an estoppel in pais or equitable estoppel exists. The relief would perhaps not differ materially from what a court of equity might grant

under the same circumstances without a curative act; but nevertheless it may be within the province of legislation.

The view of the court, with reference to the extent of such legislative power, is more clearly indicated in subsequent language used. Again we quote from the opinion: "All jurists agree that this power, while highly beneficial when kept within proper limits, is liable to great abuse; and, while some of the cases have given it very wide scope, yet the unmistakable trend both of recent judicial decisions and of recent constitutional changes is in the direction of strictly limiting this power."

The case of Dever v. Cornwell, 10 N. D. 123, 86 N. W. 227, holds, that where there was a defective publication of a general tax sale notice and a tax deed based thereon was void, such defect could not be cured by subsequent legislation. The court said, in part: "It is beyond legislative power to transfer title to land by declaring that void deeds shall be valid conveyances of title. . . . The void tax deed is not transmuted by legislative decree into a valid deed. . . ."

In the instant case we fail to see how a subsequent act of the legislature can endow with life that which never had an existence, and which could not exist primarily because of lack of essential elements. In view of the previous holdings of this court touching upon the principle involved, and conforming with what we believe is better reasoning, we hold that chapter 275, Session Laws of 1927, and chapter 305, Session Laws of 1931, are not applicable to this case.

Defendants contend, further, that even though the purported mortgage may be void, nevertheless plaintiffs are estopped from asserting its invalidity, for the reasons, that no protest was made against it prior to the commencement of the action, and that the defendant bank relying upon the validity of the mortgage foreclosed the same by advertisement, also incurred costs and expenses incident thereto; that during the period of redemption said defendant bank paid the taxes on the premises; and that no objections were made on the part of the plaintiffs at any time.

The trial court found that the wife had knowledge for the first time that the note for $1068.11 was involved in the mortgage when notice of intention to foreclose was served. It was found, also, that

the taxes were paid after the commencement of the foreclosure proceedings, and that this action was commenced within one year from the sale of the premises under the purported foreclosure. It was found, further, that plaintiffs were in possession of the premises at all times and occupied the same as their homestead.

We cannot see any grounds of estoppel indicated by reason of any delay or failure to protest, especially in view of the fact that the mortgage is void and the foreclosure based thereon is a nullity. The rule is well settled that in such circumstances no basis for estoppel exists. Moreover, to permit an estoppel in the circumstances disclosed, would defeat the purpose of the statute. 21 C. J. 1100, § 90, and cases cited; L.R.A.1916C, 241, note; 57 Am. St. Rep. 180, note; 61 Am. Dec. 453, note.

The trial court found that the taxes were paid by the defendant bank, and decreed that the amount paid out for such purpose must be reimbursed by plaintiffs, with interest, and that the defendant bank have a lien on the premises to assure the repayment.

This is in accord with the generally recognized rule of subrogation. Northwestern Mut. Sav. & L. Asso. v. White, 31 N. D. 348, 153 N. W. 972; Title Guaranty & T. Co. v. Haven, 196 N. Y. 487, 89 N. E. 1082, 1085, 25 L.R.A.(N.S.) 1308, 17 Ann. Cas. 1131, note 1134; Camden v. Fink Coal & Coke Co. 106 W. Va. 312, 145 S. E. 575, 61 A.L.R. 584, note 587.

The findings disclose that the defendant bank advanced to W. A. Acklin the sum of $175, with the understanding that a mortgage securing the same would be given covering the homestead property. Thereafter the mortgage, duly signed by the husband and wife, was delivered to the bank by the husband. The amount so received by the plaintiffs, or any part thereof, has never been repaid or tendered to the bank. The reason why the bank did not have a valid mortgage securing said amount received is due to the fact that the instrument was never legally completed. Nevertheless, there is a moral obligation, as well as a legal obligation, to repay the debt. As plaintiffs are seeking equitable relief, they should also do equity and, therefore, in good conscience should repay the $175 they received. Until plain-

tiffs have thus performed on their part, they are not in a position to appeal to the equitable conscience of this court.

We have held on several occasions, in actions to quiet title, that where a mortgage is outlawed by lapse of time but still appears of record, a court of equity cannot quiet title in the party seeking relief where the moral obligation to pay the debt remains, and have consistently refused in such circumstances to grant relief until such party has performed equitably on his part. The same rule has been applied to a plaintiff seeking similar relief who was a remote grantee of mortgaged premises but who had not assumed payment of the indebtedness and therefore was not legally bound to pay the debt.

A case similar in principle is that of Nelson v. Nelson, 58 N. D. 134, 226 N. W. 476. In the latter case the plaintiff brought an action to determine adverse claims and to annul a certain mortgage and quiet the title in plaintiff to the lands involved. The evidence established that while the mortgage was invalid and therefore did not create a legally enforceable obligation, nevertheless the plaintiff had been enriched by the proceeds of such invalid mortgage and a clear moral obligation existed; and it was held that before he could invoke equitable relief he must do equity. This court said, in part: "The equitable maxim 'He who seeks equity must do equity' may require one invoking the aid of a court of equity to obtain relief from an invalid mortgage to discharge an obligation which is binding in good conscience but not otherwise enforceable either at law or in equity." See the following cases: Howland v. Bailey, 55 N. D. 125, 212 N. W. 770; Bowman v. Retelieuk, 40 N. D. 134, 168 N. W. 576; Keller v. Souther, 26 N. D. 358, 144 N. W. 671, L.R.A.1916B, 1218; Cotton v. Horton, 22 N. D. 1, 132 N. W. 225; Boschker v. Van Beek, 19 N. D. 104, 122 N. W. 338; Tracy v. Wheeler, 15 N. D. 248, 107 N. W. 68, 6 L.R.A.(N.S.) 516.

In the instant case, therefore, we have determined that before this court can grant relief and quiet title in plaintiffs the consciences of the plaintiffs must first be quickened to the extent that they shall reimburse the defendant bank in the amount of the said debt of $175. The findings establish that the husband had, from time to time, made settlements with the bank, including both the debt of $175 and the

larger debt of $1068.11, and that he had made some payments on such indebtedness prior to the purported foreclosure, amounting, at the time of the foreclosure, to slightly more than the interest on the obligations. We therefore determine that the principal sum of $175 be restored, without interest.

It is therefore ordered that the judgment of the trial court be modified, to the extent that a decree finally quieting title to the lands in the plaintiffs be withheld until the amount so advanced by the defendant bank for taxes, including interest to date of payment, and the said sum of $175 are paid to the defendant bank; and if at any time prior to April 15, 1935, proof is presented to the trial court of such payment of $175 and said taxes, as required, then a decree shall be entered quieting title in plaintiffs; otherwise, a decree shall be entered for the sale of said lands to satisfy such indebtedness.

The judgment of the trial court is affirmed, with the modifications indicated.

BURR, Ch. J., and CHRISTIANSON, NUESSLE and BURKE, JJ., concur.

MOELLRING, J. (On rehearing). A rehearing was granted on the petition of the defendants for the purpose of determining two questions only, namely: whether or not the defendant, the First National Bank of Mott, is entitled to have personal judgments entered against the plaintiff; and whether or not the defendants should recover costs on this appeal.

We have examined the issues as contained in the pleadings and have determined that the question as to the personal liability of the plaintiffs is not within the issues and therefore is not a matter to be determined in this action. This was the theory of the trial court, and in this we concur.

With reference to costs, the defendant bank has succeeded by virtue of the appeal in securing a substantial modification of the original judgment, and we have determined that said defendant is entitled to the statutory costs on this appeal. It is so ordered.

BURR, Ch. J., and CHRISTIANSON, NUESSLE and BURKE, JJ., concur.