(67 N. W. Rep. 298.)

---

C. A. CHRISTIANSON, *et al vs.* THE FARMERS' WAREHOUSE ASS'N.

Opinion filed April 30th, 1896.

**Trial De Novo in Supreme Court—Newman Law Constitutional.**

> This court has original jurisdiction only in the excepted cases mentioned in the constitution. But chapter 82, Sess. Laws 1893, which provides that all cases tried below by the court shall on appeal be tried anew in this court, and final judgment rendered thereon, does not require this court to perform any functions that do not pertain to appellate jurisdiction, and said chapter is not therefore a violation of the constitutional provisions conferring appellate jurisdiction only upon this court.

**Negotiable Notes—Bona Fide Purchaser.**

> One who purchases a promissory note before maturity and for full consideration, and to whom the note is at the time indorsed by the payee and holder, takes such note in the ordinary course of business; and the fact that the purchaser took such note relying wholly upon the sufficiency of the mortgage security, or for the purpose of acquiring the mortgaged property by foreclosure, will in no legal sense affect his *bona fides*.

Appeal from District Court, Richland County; *Lauder,* J.

Action by C. A. Christianson and J. E. Stair against the

Farmers' Warehouse Association. From a judgment for defendant, plaintiffs appeal.

Reversed with directions.

*McCumber & Bogart*, for appellant.

A contract must not be construed so as to deprive it of all force if it is susceptible of another construction. *Wing* v. *Glick*, 56 Ia. 473, 9 N. W. Rep. 384; Dewey on Contracts, 45; *Story* v. *Solomon*, 71 N. Y. 420. The evidence shows that Mann-Fraser Co., understood the purchases were for hedges. Even if the wheat buyer understood that there was to be no delivery, still the company would be bound. Dewey on Contracts, 750; *Pixley* v. *Boyington*, 79 Ill. 351; *Wall* v. *Schneider*, 17 Rep. 700, 18 N. Y. 443; *Gregory* v. *Wendell*, 39 Mich. 337; *First Nat'l Bank* v. *Oskaloosa*, 23 N. W. Rep. 255. An option as to the time of delivery is not contrary to law. *Whitesides* v. *Hunt*, 97 Ind. 191; *Logan* v. *Murick*, 81 Ill. 415. It is not necessary that the seller of grain for future delivery have the same on hand. *Stanton* v. *Small*, 3 Sandf. 230; *Kent* v. *Miltonberger*, 13 Mo. App. 503; *Mohr* v. *Miesen*, 49 N. W. Rep. 862; Dewey on Contracts, 209. It is not material that in order to protect the commission merchant, the purchaser is required to put up margins. *Markham* v. *Judson*, 41 N. Y. 235; *Hatch* v. *Douglas*, 48 Conn. 116; Dewey on Contracts, 107; *Wall* v. *Schneider*, 17 Rep. 700. It does not tend to invalidate the contract that the damages for breach thereof, is the difference between the contract price and the market value. *Sawyer* v. *Taggart*, 14 Bush. 722; *Wall* v. *Schneider*, 17 Rep. 700; Dewey on Contracts, 176, 177.

*W. E. Purcell, L. B. Everdell* and *Chas. E. Wolfe*, for respondent.

This appeal is taken under chapter 82, Laws 1893. Which act attempts to enlarge and change the jurisdiction of the Supreme Court. "The Supreme Court except as otherwise provided in this constitution shall have appellate jurisdiction only." Sec. 86, Const. Where the constitutional jurisdiction of the Supreme

Court is appellate, the legislature cannot confer upon it original jurisdiction in any case. *Ames* v. *Boland*, 1 Minn. 268; *State* v. *Maynard*, 4 Ill. 419; *Smith* v. *Odell*, 1 Pinney, 449; *Chandler* v. *Nash*, 5 Mich. 409; *Gough* v. *Dorsey*, 27 Wis. 119; *Alexander* v. *Bennett*, 60 N. Y. 204; *Hughes* v. *Felton*, 11 Col. 489; *State* v. *Bank*, 5 Sneed. 573; *Com.* v. *Commissioners*, 37 Pa. St. 237; *Gibson* v. *Templeton*, 62 Tex. 555; *State* v. *Jones*, 22 Ark. 331; *Haight* v. *Gay*, 8 Cal. 297; *Zander* v. *Coal*, 5 Cal. 230; *U. S.* v. *Moore*, 3 Cranch. 159; *Ex parte McArdle*, 7 Wall. 506; Story on Const. 1773-4; Sutherland on Stat. Const. 395. When original jurisdiction is granted by the constitution to the District Courts that grant is exclusive. *Dillard* v. *Noel*, 2 Ark. 449; *Conners* v. *Goren*, 32 Wis. 518; *Meyer* v. *Calkman*, 6 Cal. 582; *Averill* v. *Perrott*, 41 N. W. Rep. 929; *Heith* v. *Kent*, 37 Mich. 372; *Calahan* v. *Judd*, 23 Wis. 343; *Jones* v. *Smith*, 14 Mich. 334; *Chandler* v. *Nash*, 5 Mich. 409; *Hicks* v. *Bell*, 3 Cal. 219; *Walbby* v. *Calender*, 8 Mich. 430; *Hornbuckle* v. *Toombs*, 18 Wall. 648. The words "Original Jurisdiction" as used in the constitution are to distinguish that jurisdiction from appellate jurisdiction, and must be interpreted to mean "may entertain in the first instance." *Castner* v. *Chandler*, 2 Minn. 86; *Kamdolf* v. *Thalheimer*, 17 Barb. 511. There being nothing in this case to which this court can apply its appellate jurisdiction, no judgment can be rendered here in the case. *Ames* v. *Boland*, 1 Minn. 268; *Hunt* v. *Pallas*, 4 How. 589; *McNalty* v. *Batty*, 10 How. 72; *Gordon* v. *U. S.*, 2 Wall. 561; *Gordon* v. *U. S.*, 117 U. S. 692. This appeal cannot be considered because no errors have been assigned. *Hutton* v. *Gullixon*, 10 N. W. Rep. 261; *Tizzard* v. *Fay*, 18 N. W. Rep. 869; *Freeman* v. *Rhodes*, 30 N. W. Rep. 891; *Rushfeldt* v. *Shave*, 33 N. W. Rep. 791; Rules 8, 13 and 15, Sup. Ct. § 5090, Comp. Laws. The plaintiff is not an indorsee in due course, within the meaning of Sec. 4487 Comp. Laws, because on the facts disclosed they were charged with knowledge of the illegality of the consideration. *Dows* v. *Glaspel*, 4 N. D. 251, 60 N. W. Rep. 60.

BARTHOLOMEW, J.　The appellants, C. A. Christianson and J. E.

Stair, commenced proceedings to foreclose, by advertisement, a chattel mortgage given by respondent, the Farmers' Warehouse Association, to the Mann-Frazer Company, a corporation doing business at Minneapolis, Minn., which said mortgage covered two certain frame elevators situated in Richland County, in this state, and was given to secure a promissory note for the sum of $2,850, executed by respondent to said Mann-Frazer Company. Said note and mortgage were dated July 3, 1893, and the note matured October 2, 1893. The foreclosure proceedings were commenced soon after the maturity of the note. The respondent presented to the Judge of the District Court for said county an affidavit of defense, under the law which is now embodied in section 5884, Rev. Code, whereupon said judge enjoined further proceedings by advertisement, and ordered that all further proceedings for foreclosure be had in the District Court, whereupon the matter was transferred to said court, and tried, under the provision of Ch. 82, Laws 1893; and, a judgment dismissing the action and for costs having been returned against plaintiffs, they appeal to this court, under the provisions of the statute last named. The portion of that statute material to the decision of this case reads as follows: "In all actions tried by the District Court without a jury, wherein issue of fact has been joined, all the evidence offered in the trial shall be taken down in writing, or the court may order the evidence or any part thereof to be taken in the form of depositions, or either party may, at pleasure, take his testimony or any part thereof by deposition: provided, that whenever such evidence is taken down in shorthand and written out at length, it shall be deemed to have been taken down in writing, and all testimony so taken in shorthand must, at the request of either party, be so written out at length and filed with the clerk. All evidence taken as provided by this section shall be certified by the judge at any time after the trial, and within one month before the time allowed for the appeal of said cause shall have expired, and shall thereupon become a part of the judgment roll, and the original of such judgment roll shall go

on appeal to the Supreme Court, which shall try the cause anew upon such judgment roll, and render final judgment therein, according to the justice of the case." Under the above provisions, appellants procured the evidence to be properly certified and filed as a part of the judgment roll, and bring up on this appeal the original judgment roll only, no bill of exceptions or a statement of the case having been settled or allowed. Respondent in this court makes a preliminary motion to strike from the files all the record so transmitted to this court, except the notice of appeal, the summons and pleadings, the findings and conclusions of law made by the trial court, and the judgment thereon. In other words, respondent seeks to eliminate from the record everything except what would have appeared in the judgment roll had said chapter 82 never been enacted. The basis of the motion is the alleged unconstitutionality of said chapter 82, in that it attempts to confer upon this court a jurisdiction not contemplated or permitted by the constitution, and that, being unconstitutional and void, the evidence could only be brought to this court by bill of exceptions or statement of the case under the practice and provisions governing other cases.

The question of the constitutionality of said chapter 82, Laws 1893, has received much informal discussion in legal circles throughout the state since its passage, but this is the first instance where the question has been directly raised in this court, although we have decided several cases that were brought to this court under the provisions of that act. See *Taylor* v. *Taylor*, 5 N. D. 58, 63 N. W. 893; *Nollman* v. *Evenson*, 5 N. D. 344, 65 N. W. 686. The question is one involved in much difficulty, and upon which the members of this court have not at all times been in entire accord. Broadly stated, the objections urged against this law is that it attempts to confer original jurisdiction upon this court, while, under the constitution, our jurisdiction is appellate only, except in certain specified cases. The constitutional provisions are as follows: Section 86: "The Supreme Court, except as otherwise provided in this constitution, shall have appellate

jurisdiction only, which shall be co-extensive with the state, and shall have a general superintending control over all inferior courts under such regulations and limitations as may be prescribed by law." Section 87: "It shall have power to issue writs of *habeas corpus, mandamus, quo warranto, certiorari,* injunction, and such other original and remedial writs as may be necessary to the proper exercise of its jurisdiction, and shall have authority to hear and determine the same: provided, however, that no jury trial shall be allowed in said Supreme Court, but in proper cases question of fact may be sent by said court to a District Court for trial." Section 103 of the constitution, defining the jurisdiction of the District Courts, reads: "The District Court shall have original jurisdiction, except as otherwise provided in this constitution, of all causes both at law and equity, and such appellate jurisdiction as may be conferred by law. They and the judges thereof shall also have jurisdiction and power to issue writs of *habeas corpus, quo warranto, certiorari,* injunction and other and remedial writs, with authority to hear and determine the same." It is apparent from these constitutional provisions that the decision of the question here raised must hinge largely upon the meaning that must be attached to the words "appellate jurisdiction" and "original jurisdiction," as used in that instrument, because it cannot be admitted for a moment, under the wording of our constitution, that the legislature has power to impose upon us the exercise of any original jurisdiction whatever not specially authorized by the constitution.

It may aid us to first accurately determine just what this court is required to do under the statute that has been attacked. The statute says that this court "shall try the case anew." This language, it is apparent, was not used with exact accuracy. The case is not tried anew. There is no new evidence or any evidence adduced in this court. The case must be decided upon a record already prepared by a judicial tribunal. This court simply reviews the record, and the practical and necessary result of such review is to correct the errors, if any, either of the law or

fact, into which the court below may have fallen. It is difficult to perceive any marked distinction between the jurisdiction exercised by this court in a proceeding of this character and the jurisdiction exercised prior to the enactmnent of said chapter 82. Section 5237, Comp. Laws 1887, in providing what should be done by the Supreme Court on appeal, contained this provision: "Any question of fact or law decided upon trials by the court or by referee may be reviewed when exceptions to the findings of fact have been duly taken by either party and returned." This provision has been repeatedly acted upon since statehood, and we never heard its constitutionality questioned. In *Jasper* v. *Hazen*, 4 N. D. 1, 58 N. W. 454, this court took occasion to state at length what duty was devolved upon the Supreme Court by this provision. We then stated that this court would review questions of fact in proper cases, and would set aside findings of fact, when, under the restrictions there stated, this court could see that such findings were not supported by a preponderance of the evidence. Under that provision, the judgment of this court upon the facts was required to the same extent that it is required under the law here under discussion. The judgment of the trial court upon the facts must still have weight and influence with this court, especially when based upon the testimony of witnesses who appeared in person before that court. It may be that the strong presumption of correctness under which findings of fact came to this court under the former practice does not follow them with equal force under this statute, and it may be that to some extent the appellant is relieved from the burden of pointing out the specific error of the trial court. This would seem to follow from the fact that the particular errors of the trial court, if any there be, need not be discussed by this court, or pointed out to the court below, as was imperatively necessary in all cases where a reversal sent the case back for trial *de novo*. Nevertheless, the independent judgment of this court upon the record presented, irrespective of what the trial court may or may not have held, is based only upon a review of the record made in the trial court;

and, when the judgment of the trial court was based upon error in law or fact, the judgment of this court necessarily reviews and corrects such error. But the manner in which this result is accomplished is radically different under the two systems of practice. The statute under discussion requires us to render final judgment, and thus, by its mandate, forever terminate the particular litigation. This is such an innovation upon a practice that is familiar to and well settled in the professional mind that it is received with distrust. But to the legislative mind it doubt-less suggested a means of terminating litigation in a manner that should at once possess the strongest probability of absolute justice with the least expenditure of time and money. It avoids the delay and expense of a second trial, and the risk of further errors that might necessitate a second appeal. If these legislative objects can really be accomplished, the value and propriety of the statute cannot be doubted.

Is there anything, then, in the added duties devolved upon the Supreme Court, that is beyond the scope of appellate jurisdiction, and that inherently pertains to original jurisdiction only? An appeal is a process of civil law origin. In England it was in a great measure confined to equity, ecclesiastical, and admiralty jurisdictions, where trial by jury was unknown. As originally used, it removed the entire cause to the superior court, subjecting both law and fact to a retrial. For a review of errors of law in law courts, the writ of error was universally used. See *U. S.* v. *Wonson*, 1 Gall. 13 Fed. Cas. No. 16,750; *Wiscart* v. *D'Auchy*, 3 Dall. 327; *U. S.* v. *Goodwin*, 7 Cranch, 110. Appellate jurisdiction is defined in 1 Am. and Eng. Enc. Law, p. 629, as "pertaining to and having cognizance of appeals and other proceedings for the review of adjudications." In a code state it is thus defined: "Jurisdiction to revise or correct the proceedings in a cause already instituted and acted upon by an inferior court or by a tribunal having the attributes of a court." *Auditor of State* v. *Atchison, T. & S. F. R. Co.*, 6 Kan. 505. And, again: "Appellate jurisdiction is not only a continuation of the exercise of the same

judicial power, which has been exercised in the court of original jurisdiction, but it necessarily implies that the original and appellate courts are capable of participating in the exercise of the same judicial power." *Piqua Bank* v. *Knoup*, 6 Ohio St. 391. And, for full discussion of this jurisdiction, see Elliot, App. Proc. § 16, *et seq.* We find no definition of appellate jurisdiction so limited that it will not permit the appellate court to review the facts as well as the law if the legislature so requires. As we have seen, the Supreme Court of the Territory of Dakota, at the time of and prior to the adoption of our constitution, was expressly required to review facts in certain cases, under section 5237, Comp. Laws. We have no warrant for saying that the constitutonal convention intended to curtail that jurisdiction. Nor have we any warrant for saying that such convention used the words "appellate juris-diction," in section 86 of the constitution, in any other or different sense from that given to the same words in section 103, defining the jurisdiction of the District Courts. And when, in the latter section, it is declared that the District Courts shall have "such appellate jurisdiction as may be conferred by law," it is not meant that the legislature may define appellate jurisdiction, and make it mean one thing in one case, and a different thing in another case. It is only meant that it shall have appellate juris-diction in such cases as the law may declare. It is undisputed that the appellate jurisdiction in such courts may be exercised by a strict trial *de novo*, upon new pleadings and entirely new evidence. But it is entirely competent—and it is almost univer-sally done—for the legislature to declare that in certain cases, involving only small amounts, the appellate jurisdiction of those courts shall be exercised only in the correction of errors, and such provisions do not affect the question of appellate jurisdiction, but of appellate procedure. In Story on the Constitution (section 1761) that learned author, in discussing the appellate jurisdiction of the Federal Supreme Court, says: In the first place, it may not be without use to ascertain what is here meant by appellate jurisdiction, and what is the mode in which it may be exercised.

The essential criterion of appellate jurisdiction is that it revises and corrects the proceedings in a cause already instituted, and does not create that cause. In reference to judicial tribunals, an appellate jurisdiction, therefore, necessarily implies that the subject-matter has been already instituted in and acted upon by some other court, whose judgment or proceedings are to be revised. This appellate jurisdiction may be exercised in a variety of forms, and indeed in any form which the legislature may choose to prescribe; but, still, the substance must exist before the form can be applied to it." We know of no clearer statement of the points under discussion than is contained in Judge Story's language. ·Appellate jurisdiction cannot create a cause. It must be first created and ajudicated by another judicial tribunal. Those facts existing, the appellate court may exercise its jurisdiction in any form the legislature may prescribe. The legislature may require the appellate court to review the facts, and render final judgment. If, in so doing, it exercise some of the same functions as a court of original jurisdiction, we answer that there is neither constitutional nor legal reason why it should not. Judge Elliot clearly shows that the power to render and enforce judgments is and must be inherent in every appellate court. The constitution of the State of Iowa (section 4, art. 5) reads: "The Supreme Court shall have appellate jurisdiction only in cases of chancery, and shall constitute a court for the correction of errors at law under such restrictions as the generally assembly may, by law, prescribe." Ever since *Preston* v. *Daniels*, 2 G. Greene, 536, the Supreme Court of that state has uniformly held that it had no original jurisdiction; but it has also uniformly held that the constitution gave an absolute right to a trial *de novo* in that court in chancery cases,—a right which the legislature could not take away. *Sherwood* v. *Sherwood*, 44 Iowa, 192. We are clear that, on the authorities already cited, and on sound reason and legal principles, chapter 82 of the Laws of 1893 does not confer, or attempt to confer, upon this court, any original jurisdiction; and respondent's motion must be denied.

It is claimed that this question was differently ruled in *Klein* v. *Valerius*, 87 Wis. 54, 57 N W. 1112. We think the cases clearly distinguishable. The Wisconsin statute there held to be unconstitutional made it the "duty" of the Supreme Court to review "all questions of law or fact presented upon the record upon such appeal or writ of error." The learned Supreme Court of Wisconsin condemned the law, and a main reason therefor was that it deprived a party of the constitutional right to the verdict of a jury upon the facts of a law case, and, in effect, abolished the writ of error as it was known at the time of the adoption of the constitution, and which that instrument declared should never be abolished. If there be any language in that opinion that indicates that the views of that court do not correspond with what we have said in this case, we can only say that our great respect for that court causes us to regret that our views are different. And, perhaps,—although we are not clear that such is the case,— our views differ from those expressed by the Supreme Court of Florida in *State* v. *McClellan*, (Fla.) 5 South. 600.

On the merits of the case, the first inquiry that presents itself is this: Are the appellants indorsers in good faith of the note and mortgage which are the subject matter of the action? We have scrutinized the evidence carefully. Its volume forbids even a synopsis of it. Respondent certainly claims for it all that it tends to fairly support. We quote from the brief of the learned counsel: "The evidence shows that the plaintiffs in this action are grain dealers in Minneapolis, Minnesota, members of the Chamber of Commerce of that city, having offices next door to and adjoining the offices of the payee named in the note. The business relations between the two firms have been intimate for years. They have both been engaged in wheat operations on the floor of the Chamber of Commerce for years. Plaintiffs knew that the mortgage in this case covered all of the elevator property owned by the defendants. They knew enough about the transaction out of which the note and mortgage grew to have an abiding faith at the time of the purchase of the note that it would not be

paid. Their object in buying the note and mortgage was not, in the usual course of business, to make an investment in commercial paper, but indirectly to buy the property covered by the mortgage. This note drew only eight per cent. interest; yet the plaintiffs paid twelve dollars more than the amount of the note, with interest to the date of purchase. No inquiries were made relative to the financial standing of the makers of the note; one of the plaintiffs testifying that he did not know, and he did not care. The express object of the plaintiffs in buying this note and mortgage was to obtain the property mortgaged." Do these facts show that appellants are not protected under the law merchant? The whole basis of respondent's contention rests upon his statement that the notes were not acquired in good faith and in the usual course of business. It is conceded by counsel that suspicious circumstances sufficient to put a prudent man upon inquiry are not in themselves sufficient to overcome the presumption of *bona fides* in the purchase of commercial paper. Our statute (section 4884, Rev. Code) thus defines an innocent indorsee: "An indorsee in due course is one who in good faith, in the ordinary course of business, and for value, before its apparent maturity or presumptive dishonor, and without knowledge of its actual dishonor, acquires a negotiable instrument duly indorsed to him, or indorsed generally, or payable to the bearer, or one other than the payee, who acquires such an instrument of such an indorsee thereof." What is meant by the "ordinary course of business"? In *Kellogg* v. *Curtis,* 69 Me. 212, the court says: "These words are usually defined to mean 'according to the usages and customs of commercial transactions.'" If the plaintiff purchased the note before maturity for value, that would be such a transaction. Randolph on Commercial Paper (section 988) illustrates the meaning of the words by stating what would not be "in the usual course of business;" and from his illustrations it is clear that a note purchased before maturity, for a valuable consideration, and duly indorsed by the payee, and delivered to the purchaser, is taken

in the usual course of business. We need not multiply these definitions. Their correctness will not be questioned. What facts are relied upon to take this case out of the rule? It is admitted that the note was purchased before maturity, that full value was paid therefor. Indeed, respondent makes it a matter of complaint that appellants paid slightly more than the amount of the note at the time of the purchase. It is admitted that it was duly indorsed by the payee, and delivered to the purchaser, at the time of the purchase. But it is urged that as both the payee and indorsers of the note were members of the Minneapolis Board of Trade, and their business relations were intimate, therefore the indorsees were charged with notice that the note was given for gambling transactions on the Board of Trade. There is no rule of law that will support any such presumption. Again, it is said that appellants knew when they purchased the note that it would not be paid at maturity, and that their object in making the purchase was to secure the elevators that had been mortgaged to secure the same. Counsel cite us to no case where it has ever been held that the ultimate object of the purchaser of commercial paper in making the purchase could be considered upon the question of his *bona fides*. In this case, appellants knew that they took the mortgages—the incidents of the debt—as free from all equities as the note itself. See Colebrooke Collat. Sec. § 161 *et seq*. It would, indeed, be a novel doctrine if the fact that appellants relied upon the security in making the purchase should be held to constitute bad faith on his part; and, knowing the security to be ample, it is not strange that no inquiries were made touching the financial responsibility of the maker.

We reach the conclusion, after full consideration of the evidence, that appellants were *bona fide* indorsees in the usual course of business, and, as such, were entitled to full protection against any equities between the original parties. The appellants are entitled to judgment against the respondent for the full amount of the note in suit, and a decree of foreclosure against the property described in the complaint, with costs of both courts.

The District Court for Richland County will enter judgment accordingly. Reversed. All concur.