[File No. 6930]

N. D. NICHOLS, Appellant, v. MARY F. SCHUTTE, et al., and Billings County, a municipal corporation of the state of North Dakota, Respondent.

(26 NW2d 515)

Opinion filed January 18, 1947. On Reargument April 9, 1947

*Sullivans; Fleck & Higgins,* for appellant.

*William W. Eichhorst,* States Attorney and *H. A. Mackoff,* for respondent.

NUESSLE, J. This is a statutory action to quiet title to an unplatted tract of land comprising about 1.38 acres, part of the SE¼NW¼ of Section 26, Township 140, Range 102, Billings County, North Dakota.

The defendant Billings County answered, denying any interest in or ownership on the part of the plaintiff of the property in question, alleging title thereto in itself and prayed judgment in its favor and for affirmative relief. The case was tried to the court and the defendant had judgment. Whereupon the plaintiff perfected this appeal, demanding a trial de novo in this court.

The record discloses the following facts: In 1911, plaintiff perfected title to the E¼NW¼ of Section 26, Township 140, Range 82, as part of his government homestead. The tract here in question lies in the southwest corner of the above described eighty, adjacent to the little town of Medora. In 1924, and for some years prior thereto, there was a small old log cabin thereon. This cabin was then and for some time had been unoccupied but had been rented now and again theretofore. The last tenant paid a rental of $15 per month. The defendant Mary Schutte from her early girlhood had been and was an intimate friend of the plaintiff and his family. In fact, until she moved into the cabin she was virtually a member of the plaintiff's household. In 1924 she and another girl, plaintiff's niece, took up their residence in this cabin. In 1928 she married and thereafter until 1939 she and her husband continued to occupy the cabin as their home. From time to time she made improvements. She sided, painted, fixed the roof and otherwise repaired the cabin. She put a cement foundation under it and dug a cellar. She made

substantial additions to it—porches, a kitchen, a bathroom, and erected a garage. She caused an artesian well to be drilled, piped water into the cabin, and installed plumbing fixtures therein. She exercised all the rights of ownership and made these improvements without consulting the plaintiff or in any way advising him what she was doing or intended to do with respect to the premises and he and his family were aware of what she was doing and said nothing.

In 1924 when Mrs. Schutte began to live in the cabin she was employed in a bank at Medora. During all of this time she kept books for the plaintiff, looked after his income tax matters, and performed other clerical services for him. She made no charge for these services and, on the other hand, at no time during this period did he ever ask for any rent for the use of the cabin or question her right to occupy it and use it as she saw fit. On May 25, 1936, she filed a warranty deed for record in the office of the register of deeds of Billings County. This instrument was signed by the plaintiff and his wife as grantors and conveyed the premises here in question to her. It was dated May 4, 1936, and was acknowledged as of that date before Paul Lebo, the brother of plaintiff's wife. Lebo, a notary public, was also at that time the register of Deeds of Billings County. Two persons signed as witnesses to the signatures of the plaintiff and his wife. The typewritten description of the property conveyed was as follows:

*"Starting at the Southeast Corner of the West half of the Northwest Quarter* (W½NW¼) *of Section Twenty-six, in Township One Hundred forty* (140), *North of Range One Hundred two* (102), *and running in a line north to the southwest corner of the W. J. Ray lot, and thence starting at the Southeast Corner of the West half of the Northwest Quarter* (W½NW¼) *of the above named section, and running east* 200 *feet, thence north until it intersects the South line of the W. J. Ray lot,* which said tract of land is particularly described by metes and bounds as follows, to wit: Beginning at a point on the quarter section line thirteen hundred twenty (1320) feet due east of the southwest corner of the southwest Quarter of the Northwest quarter

(SW¼NW¼) of section Twenty-six (26) Township One hundred forty (140) North, Range One hundred two (102) West, Fifth Principal Meridian, thence running due north three hundred (300) feet, thence due east two hundred (200) feet, thence due south three hundred (300) feet, thence due west two hundred (200) feet, to the point of beginning, containing one and thirty eight hundredths (1.38) acres."

That portion italicized was written with a different machine, or at least with a different ribbon from that used in writing the remainder of the description. The property thus described was a rectangular tract, bounded for 300 feet by the west line of the SE¼NW¼ of section 26, and for 200 feet by the south line of the SE¼NW¼ of said section, and contained a little less than 1.38 acres. Plaintiff theretofore had conveyed to his son-in-law, Ray, another tract which bounded the property here involved on the north. Plaintiff himself lived on a tract directly north of that conveyed to Ray and about 600 feet north of the cabin in which Mrs. Schutte lived. He had conveyed still another tract just north of his residence to his wife's brother, Paul Lebo, who resided thereon. The deed to Mrs. Schutte was filed for record on May 25, 1936. The auditor certified that the taxes were paid and the transfer entered on that day. In 1938 the bank in which plaintiff was employed as cashier was closed as insolvent. Mrs. Schutte was indebted to the defendant Billings County in a large sum on account of the wrongful use of certain bonds which had been left with the bank for safekeeping by the county. The county made a settlement with her on account of this indebtedness, under the terms of which she and her husband on July 11, 1939, deeded the property here involved, together with other property belonging to them, to the county. The value of these properties was much less than the amount of her indebtedness. The facts above stated are undisputed.

The following stipulation appears in the record: ". . . that Helen Osterhouse, the county treasurer of Billings County, if called as a witness will testify that her records show that the taxes were assessed against Mrs. Schutte for the years 1926–'37 on a tract of land on which the house she was occupying was

located and that her records show the taxes for all those previous years were paid." But it further appears from an itemized statement, signed by the county auditor and county treasurer, and which also is stipulated into the record, that the taxes for the years 1925–1936, both inclusive, were paid by Mrs. Schutte on property which was described in the treasurer's receipts therefor as Lot 26, Section 26. And that the taxes were paid by her husband for the year 1937 on property described as 1.38 acres in the southeast corner of the W$\frac{1}{2}$NW$\frac{1}{4}$ of Section 26 (changed by pencil to read E$\frac{1}{2}$NW$\frac{1}{4}$) and for the year 1938 on property described as 1.38 acres in the southeast corner of the N$\frac{1}{2}$NW$\frac{1}{4}$ of Section 26. These payments were all made before the taxes became delinquent, excepting those for 1925 paid on October 16, 1926 and for 1938 paid on July 12, 1939. The taxes for 1925 amounted to $13.79. The taxes for the following years ranged from $10.11 the smallest amount, paid on February 27, 1933, to $16.64 the greatest amount, paid on February 28, 1931. The last payment, for the 1938 taxes, was $12.01 paid on July 12, 1939, the day following that on which the deed from Mrs. Schutte and her husband deeded the property to Billings County. When Mrs. Schutte filed her deed above described for record on May 25, 1936, the taxes were certified by the county auditor as having been paid and when the county filed its deed from Mrs. Schutte for record on October 9, 1939, the county auditor made a similar certificate. Plaintiff paid the taxes on the property described as the E$\frac{1}{2}$NW$\frac{1}{4}$ for the years 1934, 1935, and 1936, on January 6, 1939, and for the year 1937 on November 30, 1938, and for the year 1938 on February 28, 1940. The maximum amount of these taxes for any one of these years was $13.65.

The testimony of Mrs. Schutte and the plaintiff with respect to the circumstances under which she began to occupy the cabin differs. Mrs. Schutte says the plaintiff told her if she wished to fix the cabin up and live in it she might do so and he would give her a deed to the property any time she wanted it; that if she did not wish to do this he was going to move the cabin away; that the consideration for the deed was to be the assistance she

rendered to him in keeping his books and accounts and performing other clerical services. The plaintiff's testimony is that the cabin was unoccupied and he told her she might live in it. He denies that he said he would give it to her. The inference to be drawn from his testimony is that he made no demand for rent for the reason she performed various services for him.

Mrs. Schutte further testified that she believed she was paying the taxes assessed against the property on which she was living and that she paid them for every year before they became delinquent. She took receipts therefor, believing the description in the receipts was that of the property in question. Other than as shown by the stipulations above referred to, it is impossible to say from the record made in this case what the books in the office of the register of deeds, of the county auditor, and of the county treasurer, show with respect to this particular tract. And as to the township records, it is stipulated that Mrs. Schutte was clerk of the township board of the organized township in which township 140, range 120, is situated, for the years from 1925 to 1938 inclusive, and that all township books and tax records kept by her at the bank of Medora up to the time of its closing in September 1938, are now lost or destroyed and cannot be found and that Mrs. Schutte claims they were left by her in the bank at the time the bank was closed.

The tax receipts given to Mrs. Schutte describe the property on which the taxes were paid as Lot 26, Section 26. And it is stipulated that the only Lot 26 in Section 26, Township 140, Range 102, is not a part of the $E\frac{1}{2}NW\frac{1}{4}$ of said section but is a platted lot containing .59 acres as shown on the official plat of the town of Medora and is now and has been owned and occupied as school premises by the DeMores School District since 1913. There is no explanation as to why the tract on which Mrs. Schutte paid the taxes was described in the receipts given therefor as Lot 26; nor is there any explanation as to how or why the auditor was enabled to and did certify that the taxes were paid on the property conveyed when the deed given by Mr. Nichols to Mrs. Schutte was filed for record, nor when the Schutte deed to the county was recorded. Nichol's tax receipts

show he paid taxes for the years 1934, 1935, 1936 in January 1939, and those for 1938 on February 28, 1940. But it does not appear when the taxes on his property for the years 1923 to 1934 were paid or who paid them. So in fact the taxes were not paid on that part of the E½ of the NW¼ owned by him at the time the auditor put these certificates on the deeds. His receipts evidence the several payments made were for the taxes on the E½NW¼ of section 26, less in one instance three-tenths of an acre and, in another, less than three acres, but it is elsewhere stated in the receipts that the acreage in the E½NW¼ was 79.7 acres.

The record in this case does not disclose the area or boundaries of the tracts conveyed to Lebo and Ray, nor when the deeds therefor were executed, nor whether they were recorded. Neither does it appear that the Nichols residence, which was situated between the tracts conveyed to Ray and Lebo was on a tract in any way segregated by survey or description or otherwise from the remainder of the E½NW¼ of section 26. It follows that the extent of the property on which Nichols paid taxes for the several years for which the receipts were given is not ascertainable. These taxes paid by him were, as shown by the receipts, in every instance less than the amount paid for any particular year by Mrs. Schutte on the property described in her receipts as Lot 26. Yet if the tract on which Nichols had his residence was not segregated from the E½NW¼ the taxes paid must have been on the whole of that tract, including that on which he lived with the improvements thereon less such portions as had been segregated from it. And there is nothing in the record to show the character or value of his improvements.

Mrs. Schutte's testimony is that when she began to live in the cabin it was worth not to exceed $100 or $150; that the improvements she made on the property in 1926 cost her $800; that it cost her $150 to $200 to have the artesian well drilled, and that the improvements she put on the property thereafter cost her $900. A total of $1850 or $1900. Another witness testified that the buildings on the property at the time the county received deed from Mrs. Schutte were worth $800. Other than the above

there is no testimony with respect to the value of these improvements. There is no testimony as to the value of the tract here in question aside from the improvements upon it either at the time Mrs. Schutte began to live there or at any other time.

Mrs. Schutte also testified that though the plaintiff had agreed to deed this property to her in 1924, nothing was said between her and the plaintiff with respect to the deed until 1936, when she requested that he convey the property to her; that Mr. Nichols then came into the bank where she was employed and she wrote the deed at his direction, taking the description as given by him; that the first part of the description italicized above was written as he gave it to her; that later, before the instrument was signed the description was amended and that Nichols then dictated to her the latter portion of the description as written therein; that there were two typewriters in the bank and she might have used a different typewriter when she wrote the latter description; that thereafter Nichols signed the instrument and took it away with him and returned with it later and gave it to her, signed, acknowledged by himself and his wife, and witnessed as the instrument now is. That her husband, who is now dead, was there at that time; that the reason for the amended description was that she and her husband wanted more land than the first description given to her covered. On the other hand, Nichols' testimony is that she called him into the bank; told him it was necessary to give another deed to Lebo to correct a defect in Lebo's title as the latter was making a loan and it was necessary that this be done; that she asked him to sign the deed and said she would procure his wife to sign it, get the description from Lebo, and fill it in. Accordingly he signed the instrument, left it with her in blank, and that was the last he saw of it. Mrs. Nichols also testified. Her testimony is that Mrs. Schutte presented the instrument to her with a similar explanation and that she signed it in blank, believing it was a deed to her brother Paul Lebo; that Mrs. Schutte took it away, and that was the last she saw of it. Lebo, a notary public, testifies that on that date, or thereabouts, Mrs. Schutte presented the instrument to him for his certificate of acknowledgment; that the de-

scription of the property conveyed was contained in it; that he knew the signatures of Nichols and his sister Mrs. Nichols and therefore acknowledged the same; that the two women who signed as witnesses were employed in his office and they were procured to sign as witnesses and that neither Nichols nor Mrs. Nichols were in the office at the time this was done; that a few days later the instrument was filed for record in his office as register of deeds. One of the subscribing witnesses testified to the same effect. The other was not called as a witness.

Mr. Nichols' testimony is that he at all times believed the deed he had executed was a deed to Lebo. This is likewise Mrs. Nichols' testimony. Lebo testified he did not read the description and did not know what property was conveyed by the instrument and at no time said anything, either to his sister Mrs. Nichols or to Mr. Nichols about the matter. At the time the deed was executed, and for some years before that, Mr. and Mrs. Nichols were only part time residents at their home on the E$\frac{1}{2}$NW$\frac{1}{4}$ of Section 26. Nichols says that on one occasion, in the summer of 1939, when they were back at home, they heard rumors that the property in question had been deeded by them to Mrs. Schutte and she in turn was about to deed it to the county; that this was the first intimation they had that Mrs. Schutte claimed the property; that they inquired of Lebo, the register of deeds about it and he told them their deed to Mrs. Schutte was of record; that Nichols went before the county board at their June meeting and told them the circumstances and protested against the county taking the property, but nevertheless it later took the deed. This however is denied by the only member of the county commission who testified. His testimony is to the effect that the commissioners did not learn of Nichols' claim as to the invalidity of the deed until after it had been received by them and placed of record. Whatever the fact may be this action was not begun until 1941. In any event, the county was in possession of the property at the time the action was tried.

This case is here for trial de novo. The court must ascertain the facts from the record, but in making its determination the findings of the trial court are entitled to appreciable weight.

Christianson v. Farmers' Warehouse Asso. 5 ND 438, 67 NW 300, 32 LRA 730; Doyle v. Doyle, 52 ND 380, 202 NW 860; Funk v. Baird, 72 ND 298, 6 NW2d 569. The record is most unsatisfactory. In some respects it presents hopeless conflicts. For that reason we have gone into detail in the foregoing statement. However, after a careful consideration we are of the opinion that the judgment of the district court must be reversed.

The property here in question is a portion of the homestead occupied by the plaintiff and his wife. A conveyance of a homestead or of any portion thereof must be executed and acknowledged by both husband and wife, otherwise it is void. Section 47–1805, ND Rev Code 1943; Silander v. Gronna, 15 ND 552, 108 NW 544, 125 Am St Rep 616; Engholm v. Ekrem, 18 ND 185, 119 NW 35; Conlon v. Dickinson, 72 ND 190, 5 NW2d 411, 142 ALR 525. The defendant Billings County claims title to the property through a deed from the defendant Mrs. Schutte, whose title in turn is predicated on a deed executed to her by the plaintiff Nichols and his wife. While Mrs. Nichols executed the deed in question we cannot escape the conclusion that she did so only because of the false and fraudulent representations of Mrs. Schutte. Thus the deed was at least voidable. 16 Am Jur 457, Deeds; 18 CJ p 242. When the facts came to the knowledge of the plaintiff and his wife they at once disaffirmed and repudiated it. Thus it was void and ineffective as against Mrs. Schutte and it was likewise void and ineffective as against any one taking from Mrs. Schutte with knowledge of the facts. Prior to the time Billings County took its deed from Mrs. Schutte in partial satisfaction of its pre-existing claim, the plaintiff (as we find) advised the Board of County Commissioners of the county of the facts in the case and that the deed from himself and his wife to Mrs. Schutte was procured through false and fraudulent means and was void and ineffective. Accordingly the plaintiff is entitled to have his title quieted as against the county.

Though the deed to Mrs. Schutte was disaffirmed and voided by the plaintiff and his wife, nevertheless Mrs. Schutte had an equity in the property. The record warrants us in accepting Mrs. Schutte's version as to what was said between her and

Nichols in 1924 respecting the property as the correct one. Pursuant to and in reliance upon his offer and promise then made, she began to occupy the property. She performed the services for Nichols as stipulated in that offer and promise. She in good faith attempted to and did pay taxes on what she believed to be the property she was occupying. She made extensive improvements upon it, by reason of which practically all the value the property now has was given to it. Through a period of fifteen years she enjoyed undisputed possession of and exercised full dominion over it. Though she had no legal title to the property at the time she conveyed it to the county, her conveyance had the effect as between her and the county of an assignment and transfer of such equities as she had in it. So that though the county acquired no legal title to the property it did acquire an equity in it to the extent the value thereof had been enhanced by the improvements placed upon it during the period when Mrs. Schutte occupied it. Therefore, though the plaintiff is entitled to have title to the property quieted in him, he must first do equity by compensating the county in the amount its value had been enhanced by such improvements at the time the county took possession thereof under its deed from Mrs. Schutte, less the value of the use and occupation of the property from such time. But it is impossible to say from the record we have before us the extent of the county's equity since there is no evidence in the record either as to the value of the property without the improvements or as to the value of the use and occupation of it during the period the county has been in possession.

Accordingly, the judgment is reversed and the case is remanded to the district court for further proceedings consistent with this opinion.

CHRISTIANSON, Ch. J., and BURKE and MORRIS, JJ., concur.

BURR, J., I agree with the disposition of this case but express no opinion as to the value of Mrs. Schutte's version of agreement with Mr. Nichols for a deed from him.

NUESSLE, J. (On reargument.) On petition of the respondent Billings County, a rehearing was ordered and had. The case was fully reargued. We have given the whole matter further and most careful consideration and can see no reason for receding from our opinion heretofore handed down. We held therein that the deed from Nichols and Mrs. Nichols was obtained through and by reason of the fraud of the grantee and that it was not acknowledged either by Nichols or Mrs. Nichols. Further, that the tract here involved was a portion of the Nichols homestead. The record clearly warrants these holdings. Not being acknowledged the deed was void. In addition to cases cited in the original opinion, see Helgebye v. Dammen, 13 ND 167, 100 NW 245; Severtson v. Peoples, 28 ND 372, 148 NW 1054; Rasmussen v. Stone, 30 ND 451, 152 NW 809; Hazlett v. Mattieu, 57 ND 57, 220 NW 647; Acklin v. First Nat. Bank, 64 ND 577, 254 NW 769.

In the petition and on the reargument, counsel for the respondent argued that we had failed to give sufficient consideration to the fact that the certificate of acknowledgment by the notary Lebo is in due form; that it is conceded he placed it on the deed; that the evidence in the record is not sufficient to overcome the presumptions arising from these facts; and that the burden of showing it is false is upon the party challenging the acknowledgment. The rule is as counsel contends that such a certificate regular on its face is presumed to state the truth. But nevertheless it may be impeached by clear and convincing evidence. Rasmussen v. Stone, 30 ND 451, 152 NW 809, supra; Yusko v. Studt, 37 ND 221, 163 NW 1066; Hazlett v. Mattieu, 57 ND 57, 220 NW 647, supra; First Nat. Bank v. Plante, 60 ND 512, 235 NW 135; Passenger v. Coan, 61 ND 569, 238 NW 773.

In the instant case Mrs. Nichols admits that she signed the deed. But she positively denies that she appeared before the notary Lebo and acknowledged her signature thereto. One of the subscribing witnesses testified positively that when she signed as such witness and the notary placed his certificate of acknowledgment thereon, Mrs. Nichols was not present. Lebo the notary testified he placed the certificate upon the deed but

that Mrs. Nichols was not present when he did so and never acknowledged it before him. Both Lebo and the subscribing witness testified that it was Mrs. Schutte who brought the deed to the office of the register of deeds and procured Lebo to certify to the acknowledgment and the witness to sign it. Mrs. Schutte denies this and says it was returned to her in the bank signed by both Nichols and Mrs. Nichols, acknowledged and witnessed as it now appears. Nichols in turn denies this and says he signed the deed at the bank in Mrs. Schutte's presence in the belief it was a deed to Lebo and left it with Mrs. Schutte who stated she would procure the signature of Mrs. Nichols. Mrs. Nichols' testimony is that she signed the deed at the request of Mrs. Schutte, who told her that it was a deed to Lebo. On this record the proofs are so convincing that we are unquestionably warranted in holding that the deed was not acknowledged by either Nichols or Mrs. Nichols.

The judgment appealed from was predicated on the theory that the plaintiff was estopped to question the validity of the deed to Mrs. Schutte by reason of delay in disaffirming it and bringing this action. The record does not sustain this theory. At most, there was a delay of but two years. The consideration from the respondent Billings County to Mrs. Schutte was a past-due obligation. There is nothing to indicate that the county was in any way prejudiced by such delay as there was.

The order heretofore entered reversing the judgment and remanding the case to the district court for further proceedings consistent with the opinion will stand.

CHRISTIANSON, Ch J., and BURKE, MORRIS and BURR, JJ., concur.