John A. WATSON, Hjerdis E. Watson, William M. Watson, and Elizabeth Watson, Plaintiffs and Respondents,

v.

Arno A. KRESSE and Minnie Kresse, Defendants and Appellants.

No. 8038.

Supreme Court of North Dakota.

May 22, 1964.

Rehearing Denied Oct. 29, 1964.

Lashkowitz & Lashkowitz, Fargo, for defendants and appellants.

Wattam, Vogel, Vogel, Bright & Peterson, Fargo, for plaintiffs and respondents.

STRUTZ, Judge.

This is an action for specific performance of an option agreement given and executed by the defendants to the DX Sunray Oil Company and assigned by DX Sunray Oil Company to Watson & Hawkins, Inc., of Fargo, a corporation, and thereafter assigned by Watson & Hawkins, Inc., to John A. Watson, Hjerdis E. Watson, William M. Watson, and Elizabeth Watson, the plaintiffs herein. The answer of the defendants is in the form of a general denial, together with two affirmative defenses: (1) that the defendants had rescinded the agreement prior to the exercise of the option and (2) that the defendants had been coerced into signing the agreement by fraudulent representations and by use of undue influence. Defendants also contend that the assignments from DX Sunray Oil Company to Watson & Hawkins, Inc., and from Watson & Hawkins, Inc., to the plaintiffs were not properly executed and therefore were invalid, and that the attempted notice of exercise of the option therefore was void and of no effect.

The facts, briefly stated, are as follows: On May 17, 1960, Ray Shackow, one of the owners of Island Park Realty of Fargo, called on the defendant Minnie Kresse for the purpose of soliciting the right to sell her home. Shackow was told by Mrs. Kresse that she wanted to keep her home. There was considerable discussion between the real estate agent and Mrs. Kresse in which he represented that she would be able to secure a lot in the vicinity of the present location of her home, within a block and a half of her present residence, on which the house, which the agency was not to sell, could be relocated. The defendant contends that Shackow agreed to get such lot for her, whereas Shackow claims that he merely told the defendant that certain lots were available. There also was discussion to the effect that the defendant would be able to relocate her home on one of such nearby lots at a cost of "approximately" $6,000, and that she thus would realize "approximately" $10,000 on the transaction. Shackow admitted that this was substantially what occurred, but contended that he did not guarantee that the defendant would make any such sum on the transaction and that, in fact, he had informed her only that lots were available within the area indicated for the relocation of her house.

The record discloses that the defendant Minnie Kresse signed a listing agreement by which Island Park Realty was given an exclusive listing of the defendants' property for the purpose of selling it. The following evening, May 18, Shackow and his brother-in-law, a Mr. Miller, who together operate the Island Park Realty, called on the defendant Minnie Kresse and told her

that they had a purchaser for her property. The defendant, however, wanted to talk the matter over with her daughter so, that same evening, Shackow and Miller drove her to the farm home of her daughter near Wheatland, North Dakota. After considerable argument, in which the matter of moving the defendants' house onto a nearby lot again was discussed, the defendant Minnie Kresse signed the option agreement giving to DX Sunray Oil Company an option to purchase the lot on which the defendants' house stood for $16,800. The evidence discloses that the $800 represented the real estate agent's commission. There is no evidence that the defendant Minnie Kresse at any time read the agreement as it was signed.

After the defendant had signed the option agreement, which she had not read because, she contends, Shackow had assured her that he was an honest man and would not take advantage of an elderly woman, she was taken by Shackow and Miller to Pine Lake, Minnesota, some 130 miles distant, for the purpose of securing her husband's signature to the agreement. It was after midnight when they reached Pine Lake and the husband, defendant Arno Kresse, had retired. He was awakened, and, on the assurance of his wife that the agreement was all right and that Shackow had told her that he would get a nearby lot for the relocation of the house, he also signed the option without reading it. The agreement as signed made no mention of the matter of securing a lot in the same neighborhood for the relocation of defendants' house.

Shackow was a notary public commissioned by the State of North Dakota. The option agreement shows that he took the acknowledgment of both defendants, although the evidence shows that the defendant Arno Kresse signed the instrument at Pine Lake, in the State of Minnesota.

The option agreement thereafter was assigned by DX Sunray Oil Company to Watson & Hawkins, Inc., of Fargo. This assignment was executed in the Des Moines, Iowa, office of DX Sunray Oil Company on July 18, 1960. The evidence of the plaintiffs further indicates that, on the same day, July 18, 1960, Watson & Hawkins, Inc., assigned the option agreement to the plaintiffs herein and the plaintiffs, again on the same date, exercised the option by giving notice, by certified mail, to the defendants.

On these facts, the trial court decreed specific performance of the agreement and the defendants have appealed from the judgment, demanding a trial de novo.

After submission and consideration of this case, it was apparent that the principal issue to be determined on this appeal was whether the property involved in the action was the homestead of the defendants. While the record disclosed a number of references to the property as the home of the parties, or the home of the defendant Minnie Kresse, there was no clear and positive evidence from which the court could actually determine whether the premises described in the option to sell was, in fact, the homestead of the parties. We therefore remanded the case to the trial court with direction to take additional testimony on the sole issue of whether this property was the homestead of the defendants at the time the option was executed by them in May of 1960. We requested the trial court to make further findings on this issue and to certify the same to this court. Sec. 28–27–32, N.D.C.C.

The trial court, pursuant to such remand, took additional evidence and made findings thereon and certified the same to this court. Such additional findings are to the effect that the property described in the plaintiff's complaint was not the homestead of the defendants, or of either of them, at the time the option agreement to sell was signed.

In an action tried to the court without a jury, the appellate court, on appeal demanding trial de novo, tries the case anew, giving appreciable weight to the findings of the trial court. Gust v. Wilson, 79 N.D. 865, 60 N.W.2d 202, 38 A.L.R.2d 1371; Sec. 28–27–32, N.D.C.C. While the appel-

late court, in reviewing such case tried without a jury, will give appreciable weight to the findings of the trial court, it still has the duty to try anew all questions of fact in the entire case. In doing so, it will carefully review and analyze the evidence and render a just decision based on all of the evidence in the case. Donaldson v. City of Bismarck, 71 N.D. 592, 3 N.W.2d 808.

As one of the grounds for avoiding the option agreement, the defendants have alleged rescission of the agreement. The evidence shows that the notice of such attempted rescission, with return of the consideration, was given to Island Park Realty, Inc., which, according to the record, was the agent of the defendants. No attempt was made to rescind the option agreement by serving notice of rescission upon DX Sunray Oil Company, the other party to such option agreement. Therefore, the attempted rescission of the option was ineffectual. Sec. 9–09–04, N.D.C.C.

Generally speaking, when an agreement or contract is in writing, whether or not the law requires it to be written, such written agreement supersedes all the oral negotiations, agreements, or stipulations which preceded or accompanied the execution of such instrument. Sec. 9–06–07, N.D.C.C. Therefore, neither the option agreement given to DX Sunray Oil Company nor the listing agreement, by the terms of which the defendants gave to Island Park Realty the right to sell the property, could be altered or changed by parol testimony, for parol testimony is inadmissible to vary the terms of a complete and unambiguous contract. Stair v. Hibbs, 52 N.D. 910, 204 N.W. 621; Gilbert Manufacturing Co. v. Bryan, 39 N.D. 13, 166 N.W. 805; Streeter v. Archer, 46 N.D. 251, 176 N.W. 826; Larson v. Wood, 75 N.D. 9, 25 N.W.2d 100; Mevorah v. Goodman, 79 N.D. 443, 57 N.W.2d 600, 49 A.L.R.2d 825. Clearly, no evidence to alter the terms of the written agreement would be admissible.

The defendants also contend that the option was not exercised until the sixty-first day, and therefore was not exercised in time. It is true that the option was exercised on the sixty-first day, but in this case that fact is immaterial. The sixtieth day fell on a Sunday. Our statute specificly provides that whenever an act of a secular nature, other than a work of necessity or mercy, is appointed by law or by contract to be performed upon a particular day which falls on a holiday, such act may be performed upon the next business day with the same effect as if it had been performed on the day appointed. Sec. 1–03–05, N.D.C.C. Thus the defendants' contention that the option was not exercised until the sixty-first day is of no force, since the sixtieth day fell on Sunday.

The defendants raise the question of consideration for the option, which was the sum of one dollar, and which they, in attempting to rescind, had returned to Island Park Realty, Inc. Whether there was good consideration for the option after the dollar had been so returned is immaterial. Our statute specificly provides that a written instrument is presumptive evidence of a consideration. Sec. 9–05–10, N.D.C.C.

It is contended, however, that the defendants' assent to the contract was obtained by misrepresentation and coercion. Our law provides that specific performance cannot be enforced against the party to a contract if his assent thereto was obtained by misrepresentation, concealment, circumvention, or unfair practice "of any party to whom performance would become due under the contract." Sec. 32–04–13, N.D.C.C. There is no contention on the part of the defendants that DX Sunray Oil Company in any way misrepresented any of the facts to the defendants. Such misrepresentation as is claimed by the defendants was committed by the real estate agent who had a listing agreement with the defendants and who, under such listing agreement, was acting as defendants' own agent.

Defendants next contend and strongly emphasize that the assignment of such option agreement from DX Sunray Oil Com-

pany to Watson & Hawkins, Inc., was executed on July 18 in Des Moines, Iowa, and that it would have been impossible to transmit such assignment from Des Moines to Fargo so that it could have been received by Watson & Hawkins, Inc., in sufficient time on that day for Watson & Hawkins, Inc., to have held a legal meeting and, in turn, to have executed an assignment of the agreement to the plaintiffs as individuals, and for the plaintiffs thereafter, and still on the same day, to have mailed to the defendants the proper notice of exercise of the option.

■ The defendants may be correct in their contention, but we do not believe it is material whether or not the assignment from DX Sunray Oil Company to Watson & Hawkins, Inc., actually was delivered to the assignee before it, in turn, assigned to the plaintiffs and the plaintiffs thereafter exercised the option. Defendants clearly are in no position to question whether there was an assignment executed and delivered from DX Sunray Oil Company to Watson & Hawkins, Inc.

The defendants contend that the option was signed by the defendant Minnie Kresse in Cass County, North Dakota, and by defendant Arno Kresse at Pine Lake, Minnesota, and that the acknowledgment of both defendants' signatures was taken by Ray Shackow, who is a North Dakota notary public.

■ An agreement for the sale of real property, or an interest therein, must be in writing and subscribed by the party to be charged or by his agent. Sec. 9–06–04(4), N.D.C.C.

■ Ordinarily, such transfer of an estate in real property need not be acknowledged or witnessed to be valid. Secs. 47–10–01 and 47–10–06, N.D.C.C.; Bumann v. Burleigh County, 73 N.D. 655, 18 N.W.2d 10.

The rule is not the same, however, where the property being transferred is the homestead of the parties. A homestead of a married person cannot be conveyed or encumbered unless the instrument transferring the interest therein is executed and acknowledged by both the husband and the wife. Sec. 47–18–05, N.D.C.C.; Dixon v. Kaufman, 79 N.D. 633, 58 N.W.2d 797; Nichols v. Schutte, 75 N.D. 207, 26 N.W.2d 515.

In this case, there was a purported acknowledgment of the signatures of both of the defendants on the option agreement. The record clearly discloses, however, that the defendant Arno Kresse never appeared before the notary in the State of North Dakota. Therefore, if the property was, in fact, the homestead of the parties on the date the option was signed, the purported acknowledgment was void and of no effect. Section 44–06–01 of the North Dakota Century Code provides that a notary shall have the power and authority to take acknowledgments anywhere in the State.

■ Thus, since the jurisdiction of a notary public appointed in the State of North Dakota is limited to acknowledgments taken within the State, the acknowledgment of the signature of the defendant Arno Kresse made before the North Dakota notary in the State of Minnesota would be of no effect. If, however, as determined by the trial court, the property in question is not the homestead of the parties, no acknowledgment before a notary is necessary and the signature of the defendant Arno Kresse to the option agreement was all that was required.

■ Section 47–18–02 of the North Dakota Century Code defines "head of a family." The evidence taken by the trial court, pursuant to our remand, discloses that the defendants, although not divorced, are living separate and apart from each other. The husband maintains his residence at the farm where the parties formerly resided, while the wife, the defendant Minnie Kresse, lives on the premises described in the complaint with a daughter and grandchildren who are not dependent upon the defendant. The trial court found that,

under these circumstances, she was not the "head of a family" under Section 47–18–02 of the North Dakota Century Code, and therefore not empowered to claim a separate homestead. The appellant contends that the trial court is in error in this finding, that the defendant does qualify as the "head of a family" under this statute, and that the premises, on the date of the signing of the option, were and now are her homestead.

We have examined the record and, having considered all of the evidence, find that the defendant Minnie Kresse is not the "head of a family," as defined by Section 47–18–02, North Dakota Century Code, and that the premises described in the complaint were not her homestead on the 18th day of May, 1960, when she signed the option agreement.

For reasons stated herein, the judgment of the district court is affirmed.

MORRIS, C. J., and BURKE and TEIGEN, JJ., concur.

ERICKSTAD, J., not being a member of this Court at the time of submission of this case, did not participate.